No. 03-008

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 235N

BRUCE J. BOURDELAIS,

Plaintiff and Appellant,

v.

SEMITOOL, INC., a Montana Corporation,

Defendant and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DV-01-073(B),
The Honorable Deborah Kim Christopher, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary A. Crowe, Crowe Law Firm, Kalispell, Montana

For Respondent:

Douglas J. Wold, Leslie Ann Budewitz, Wold Law Firm, P.C., Polson,
Montana

Submitted on Briefs: June 5, 2003

Decided:  September 8, 2003

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), of the Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result, to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Appellant Bruce Bourdelais filed a complaint against Respondent Semitool, Inc., in the Eleventh Judicial District Court, Flathead County. Bourdelais' complaint alleged that he had been wrongfully discharged by Semitool. Semitool filed a motion for summary judgment on Bourdelais' complaint. The District Court granted Semitool's motion, and Bourdelais appeals. We affirm.

¶3 We restate the issues on appeal as follows:

¶4 1. Did the District Court abuse its discretion when it denied Bourdelais' motion for leave to file discovery?

¶5 2. Did the District Court err in granting Semitool's motion for summary judgment?

¶6 Bruce Bourdelais began working for Semitool, Inc., in 1992. For the first few years of his employment, Bourdelais held several different positions. Then, in 1996, Bourdelais began working in Semitool's electrochemical deposition (ECD) lab as a lab tech. Bourdelais worked four ten-hour shifts on Monday through Thursday of each week. He also occasionally worked overtime hours by working more than forty hours Monday through Thursday, or by working on Fridays.

¶7 In September of 1999, Bourdelais was advised that a recently-hired employee, Paola

2

Cagnoni, was to be his new supervisor. Upon her arrival at Semitool, Cagnoni assigned Bourdelais a new schedule requiring that he work five eight-hour shifts on Monday through Friday of each week.

¶8 Bourdelais refused to adhere to Cagnoni's new schedule. On October 26, 1999, Cagnoni's supervisor, Ian Sharp, met with Bourdelais and reiterated the fact that his new scheduled consisted of five eight-hour shifts on Monday through Friday of each week. Bourdelais informed Sharp that he did not want to work a Friday shift as part of his regular schedule. Sharp advised Bourdelais that it may be possible to transfer him to another department where he could resume his previous schedule, but that while Bourdelais worked in the ECD lab, he must follow Cagnoni's new schedule.

¶9 The record clearly shows that despite his conversation with Sharp, Bourdelais failed to regularly adhere to the new schedule. In November of 1999, Semitool notified its employees that if they informed their supervisor in advance, they could work four hours on the day before Thanksgiving (November 24, 1999), or take the entire day off without holiday pay. Bourdelais worked for six hours on November 24, 1999, and then left Semitool without notifying anyone. On November 30, 1999, Cagnoni issued Bourdelais a written "counseling statement" regarding his behavior on November 24, 1999. The "counseling statement" provided, in pertinent part:

> I have informed employee of the following standards that will be expected in the future: As told in Oct. (26[th]), hours of work are Mon-Fri 8-5 pm with 1 hr for lunch. Absence during these hours must be agreed by immediate supervisor, in view of the above, in advance.

> The following action is being taken due to the employee's conduct: Absence between Mon-Fri 8-5 must be approved by supervisor, in advance.

3

Continued or additional misconduct may result in the following: transfer, suspension or dismissal.

¶10 Bourdelais signed the "counseling statement" after reviewing it. However, Bourdelais perpetually refused to follow his new schedule. Instead, Bourdelais continued to work four ten-hour shifts each week and submit the hours he worked on Fridays as overtime. Cagnoni advised her supervisors of the problem and it was agreed that although Bourdelais had violated company policy, Cagnoni should approve Bourdelais' overtime hours (by signing his time sheet) because he had worked such hours. In the ensuing weeks, Cagnoni approved further overtime hours for Bourdelais; however, she repeatedly requested that Bourdelais adhere to his new schedule.

¶11 Throughout the fall of 1999 and in early 2000, Cagnoni reported several incidents to Semitool's Human Resources Manager, Vicki Billmayer, in which Bourdelais either ignored her instructions or refused to help her with work-related projects. Billmayer was also aware that Bourdelais was very critical of: (1) Cagnoni personally; and (2) Cagnoni's job performance. In late January or early February of 2000, Billmayer met with Sharp and Semitool's Production Manager, Kimberly Shiflett, to discuss transferring Bourdelais to another department. Shortly thereafter, Bourdelais was transferred to Semitool's "production floor."

¶12 After Bourdelais' transfer, several incidents occurred in which office supplies were hidden or personal hygiene items (such as toothpaste) were left on Cagnoni's desk. Cagnoni interpreted the items left on her desk as criticisms of her personal hygiene. Various members of Semitool's staff attributed the incidents to Bourdelais. Cagnoni eventually began to fear that Bourdelais would cause her physical harm. Cagnoni reported her feelings

4

to Sharp. On February 14, 2000, Billmayer spoke to Bourdelais and warned him to be careful how he treated Cagnoni, as Cagnoni could sue Bourdelais or Semitool for harassment.

¶13 On February 21, 2000, Cagnoni found a bar of soap on her desk. She reported the incident to Semitool's Security and Human Resources departments. Security Director David Jolly investigated the incident and discovered that a closed circuit television camera in the ECD lab showed Bourdelais approach Cagnoni's desk and leave an item there. Jolly later confirmed that the item was a bar of soap.

¶14 Jolly immediately advised Billmayer of the incident. Billmayer discussed the incident with Sharp and Shiflett and it was agreed that Bourdelais would be discharged. Bourdelais met with Billmayer, Sharp and Jolly on February 21, 2000, and was discharged that same day.

¶15 Bourdelais filed a complaint against Semitool on February 9, 2001, alleging that he had been wrongfully discharged. Semitool filed a motion for summary judgment on Bourdelais' complaint on May 1, 2002. On June 26, 2002, Bourdelais filed a motion requesting leave to file discovery. The District Court denied Bourdelais' motion on July 29, 2002. Bourdelais responded on July 30, 2002, by filing a motion requesting that the District Court reconsider his motion for leave to file discovery. The District Court granted Bourdelais' motion for reconsideration on August 29, 2002. However, upon such reconsideration, the District Court denied Bourdelais' motion for leave to file discovery that same day.

¶16 The District Court issued findings of fact and conclusions of law on September 13,

5

2002, granting summary judgment in favor of Semitool. Bourdelais appealed on September 23, 2002.

¶17 Our standard of review concerning a district court's ruling on a discovery matter is whether the district court abused its discretion. *Spooner Const. & Tree Service v. Maner*, 2000 MT 161, ¶ 24, 300 Mont. 268, ¶ 24, 3 P.3d 641, ¶ 24.

¶18 Our review of a district court's grant or denial of a motion for summary judgment is *de novo*. *Casiano v. Greenway Enterprises, Inc.*, 2002 MT 93, ¶ 13, 309 Mont. 358, ¶ 13, 47 P.3d 432, ¶ 13. Therefore, we apply the same Rule 56, M.R.Civ.P., criteria as applied by the district court. *Casiano*, ¶ 13. Pursuant to Rule 56, M.R.Civ.P.:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Casiano*, ¶ 13.

¶19 Did the District Court abuse its discretion when it denied Bourdelais' motion for leave to file discovery?

¶20 Bourdelais' motion for leave to file discovery sought to file: (1) his deposition; (2) the deposition of the Flathead County Sheriff's Office Records Custodian; (3) his response to Semitool's first set of discovery requests; and (4) his supplemental response to Semitool's first set of discovery requests. The District Court initially denied Bourdelais' motion. Bourdelais then responded by filing a motion requesting that the District Court reconsider his motion for leave to file discovery. The District Court granted Bourdelais' motion for

6

reconsideration, and upon such reconsideration, denied Bourdelais' motion for leave to file discovery, for the second time, on August 29, 2002. Several weeks later, on September 13, 2002, the District Court granted Semitool summary judgment on Bourdelais' wrongful discharge claim.

¶21 Bourdelais appealed on September 23, 2002. His notice of appeal states only that he is appealing from "the Findings of Fact, Conclusions of Law and Order rendered on September 13, 2002."

¶22 On February 3, 2003, Semitool filed a motion requesting that this Court either: (1) dismiss Bourdelais' appeal, or (2) require Bourdelais to file a transcript of the hearing on its motion for summary judgment. Bourdelais responded to Semitool's motion on February 10, 2003, stating that the primary issue on appeal "revolve[d] around" the District Court's denial of his motion for leave to file discovery. Bourdelais further stated that the transcript would have very little, if any, probative value to the issues he had raised on appeal.

¶23 In an order dated February 25, 2003, we noted that Rule 22, M.R.App.P., does not contemplate the filing of a reply brief in support of a motion to dismiss, and went on to deny Semitool's motion, stating:

> [I]t appears that Bourdelais is appealing from the entry of summary judgment in favor of Semitool. We review an order of summary judgment *de novo*, and in doing so, we examine the pleadings, briefs and the discovery information and affidavits on file, just as the District Court does pursuant to Rule 56(c), M.R.Civ.P. This being the case, it is not necessary for the Court to review the transcript of the oral argument from the hearing on summary judgment.

¶24 On appeal, Bourdelais contends that the District Court abused its discretion when it denied his motion for leave to file discovery. Semitool counters that the issue is not properly before this Court, as Bourdelais failed to raise it in his notice of appeal. We agree.

7

¶25     Rule 4(c), M.R.App.P., provides, in pertinent part, that: "the notice of appeal shall specify the party or parties taking the appeal; and shall designate the judgment, order or part thereof appealed from." As we noted in our February 25, 2003, order, Bourdelais' notice of appeal states that he is appealing from "the Findings of Fact, Conclusions of Law and Order rendered on September 13, 2002." The order rendered by the District Court on September 13, 2002, pertains to Semitool's motion for summary judgment. The District Court issued its order denying Bourdelais' motion for leave to file discovery on August 29, 2002. We have previously concluded that "we will not consider an appeal from an order not designated in the notice of appeal." *Lewis v. Puget Sound Power & Light Co.*, 2001 MT 145, ¶ 27, 306 Mont. 37, ¶ 27, 29 P.3d 1028, ¶ 27, see also *State v. Delap* (1989), 237 Mont. 346, 350-51, 772 P.2d 1268, 1271. Bourdelais makes no reference to the District Court's August 29, 2002, order in his notice of appeal. Accordingly, we decline to consider the District Court's denial of Bourdelais' motion for leave to file discovery.

¶26     Did the District Court err in granting Semitool's motion for summary judgment?

¶27     Bourdelais alleges that the District Court erred when it granted Semitool's motion for summary judgment, as genuine issues of material fact existed with regard to his claim for wrongful discharge. Specifically, Bourdelais asserts that facts remain in dispute as to whether Semitool had good cause to discharge him from employment.

¶28     Wrongful discharge claims are governed by Montana's Wrongful Discharge From Employment Act, located at §§ 39-2-901 through 915, MCA (1999) (hereinafter the WDEA). In order to prevail on a claim of wrongful discharge, an employee must first prove that he or she was discharged within the meaning of the WDEA. *Delaware v. K-Decorators,*

8

*Inc.*, 1999 MT 13, ¶ 57, 293 Mont. 97, ¶ 57, 973 P.2d 818, ¶ 57. The employee must then prove that the discharge was wrongful. *Delaware*, ¶ 57. In the instant case, it is undisputed that Bourdelais was discharged within the meaning of § 39-2-903(2), MCA (1999). Accordingly, Bourdelais' sole burden is to prove that his discharge was wrongful.

¶29 Pursuant to § 39-2-904, MCA (1999), a discharge is wrongful only if:

(1) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;

(2) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or

(3) the employer violated the express provisions of its own written personnel policy.

¶30 Bourdelais alleges that his discharge was wrongful under § 39-2-904(2), MCA (1999), because Semitool did not have good cause to discharge him. The term "good cause" is defined in the WDEA as: "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason." Section 39-2-903(5), MCA (1999). Additionally, a "legitimate business reason" within the meaning of § 39-2-903(5), MCA (1999), is "a reason that is neither false, whimsical, arbitrary or capricious," and has some logical relationship to the needs of the business. *Delaware*, ¶ 57 (citation omitted).

¶31 In this case, Semitool provided two reasons for its decision to discharge Bourdelais from employment: (1) Bourdelais' failure to follow Cagnoni's lawful and reasonable instructions regarding his work schedule; and (2) Bourdelais' harassment of Cagnoni. As we will explain below, we need only consider the first reason.

¶32 We have previously held that an employer who terminated an employee for failing

to follow his or her employer's instructions had good cause to do so. See *Mysse v. Martens* (1996), 279 Mont. 253, 926 P.2d 765, and *Miller v. Citizens State Bank* (1992), 252 Mont. 472, 830 P.2d 550. Accordingly, Semitool has provided a good cause reason for its decision to discharge Bourdelais.

¶33    In order for an employee to defeat his or her employer's summary judgment motion on the issue of good cause, the employee must present evidence that is sufficient to raise a material issue of fact as to whether the discharge was for good cause. Mere denial or speculation will not suffice, the employee must show facts sufficient to raise a genuine issue. *Mysse*, 279 Mont. at 262, 926 P.2d at 770.

¶34    Bourdelais offered no such proof to contradict Semitool's claim that he failed to follow his assigned work schedule. That is, while Bourdelais asserts that his failure to follow his work schedule was the result of "mis-communications," it is undisputed that Bourdelais was repeatedly informed (both orally and in writing) of his work schedule and chose not to adhere to it. It is well stated that a party cannot create a disputed issue of material fact by merely putting his or her own interpretations and conclusions on an otherwise clear set of facts. *Koepplin v. Zortman Mining, Inc.* (1999), 267 Mont. 53, 61, 881 P.2d 1306, 1311. Bourdelais' assertions regarding his failure to follow his work schedule are simply that - his own interpretations of an otherwise clear set of facts. As such, we conclude that Bourdelais failed to raise a genuine issue of material fact as to whether he neglected to follow Semitool's lawful and reasonable instructions regarding his work schedule. Thus, Semitool has established as a matter of law that it is entitled to summary judgment.

10

¶35     In light of our conclusion that Semitool had good cause to dismiss Bourdelais for failing to follow his work schedule, we need not address the issue of whether or not Semitool had good cause to dismiss Bourdelais for harassment.

¶36     The judgment of the District Court is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

Justice James C. Nelson concurs and dissents.

¶37    I concur with Issue 2. I do not agree with the rationale of Issue 1, and, therefore, dissent.

¶38     I do not agree that Issue 1 should be decided on the basis of Rule 4(c), M.R.App.P. Bourdelais's motion to file discovery, the court's order denying that, and his motion for reconsideration and the ultimate denial of that are all interlocutory, intermediate orders preceding the final--and appealable--order granting Semitool summary judgment.

¶39    Rule 2(a), M.R.App.P., allows the review of "intermediate order[s] or decision[s]" as part of our review of the final judgment. In the case at bar, the court's decision not to allow discovery to be filed and the denial of the motion to reconsider were all intermediate, interlocutory orders and, therefore, not appealable.

¶40    Rule 2(a), M.R.App.P., allows review of these orders as part of our review of the final summary judgment order. *Ruana v. Grigonis* (1996), 275 Mont. 441, 452, 913 P.2d 1247,

11

1254 (quoting *Brown v. Midland National Bank* (1967), 150 Mont. 422, 429, 435 P.2d 878, 882) ("all non-appealable intermediate orders or decisions properly excepted or objected to which involve the merits or necessarily affect the judgment are reviewable on appeal from a final judgment." The only criteria for application of this Rule to intermediate orders is that the objection at issue in the intermediate order be properly preserved.). *See, also Hennen v. Omega Enterprises* (1994), 264 Mont. 505, 507-508, 872 P.2d 797, 799, and *DeVoe v. State* (1997), 281 Mont. 356, 362-63, 935 P.2d 256, 259-60 *accord*. Here, the objection was preserved.

¶41    I would reach the merits of Issue 1 and decide this case on that basis. I dissent from our failure to do so.

/S/ JAMES C. NELSON


Justices Patricia O. Cotter and Jim Rice concur in the foregoing concurrence and dissent.


/S/ PATRICIA COTTER
/S/ JIM RICE