No. 01-136

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 93

TONY CASIANO,

        Plaintiff/Respondent/Cross-Appellant,

    v.

GREENWAY ENTERPRISES, INC.,

        Defendant/Appellant/Cross-Respondent.

APPEAL FROM:    District Court of the First Judicial District,
                       In and for the County of Lewis and Clark,
                       The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Palmer A. Hoovestal, Hoovestal & Kakuk, PLLC, Helena, Montana

        For Respondent:

        Candace Payne, Gary Davis, Luxan & Murfitt, PLLP, Helena, Montana

                             Submitted on Briefs: September 27, 2001

                                   Decided:     May  9,  2002

Filed:

                                        Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Greenway Enterprises, Inc. ("Greenway") appeals from the rulings made by the First Judicial District Court, Lewis and Clark County, denying its: 1) third motion for summary judgment, 2) motion to discharge the jury, and 3) motion for judgment as a matter of law, or alternatively, for a new trial. We affirm.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court err in denying Greenway's third motion for summary judgment?

¶4 2. Did the District Court err in denying Greenway's motion to discharge the jury?

¶5 3. Did the District Court err in denying Greenway's motion for judgment as a matter of law, or alternatively, for a new trial?

FACTUAL AND PROCEDURAL BACKGROUND

¶6 Greenway is a Montana corporation located in Helena, Montana. Tony Casiano ("Casiano") was hired by Greenway as a construction laborer in October 1997. On April 27, 1998, Casiano completed Greenway's six month probationary period. During Casiano's employment at Greenway, he worked on several projects, including the construction of a surgical center next to St. Peter's Hospital in Helena ("the Surgi-Center project").

¶7 On July 17, 1998, while working at the Surgi-Center project, Casiano was discharged from his employment by his supervisor, John Ellermeyer, for alleged insubordination. That same day, Jon Hoovestal, Vice President of Greenway, informed Casiano of Greenway's written internal grievance procedures. Greenway did not

2

provide Casiano a written copy of its grievance procedures after his discharge.

¶8 On April 7, 1999, Casiano filed a complaint against Greenway under the Montana Wrongful Discharge Act alleging that: 1) his discharge was in retaliation for filing a worker's compensation claim in violation of § 39-71-317(1), MCA; 2) his discharge was not for good cause in violation of § 39-2-904(2), MCA; and 3) his discharge was in retaliation for refusing to violate public policy in violation of § 39-2-904(1), MCA.

¶9 On August 1, 2000, Greenway filed a third motion for summary judgment alleging Casiano's action was barred by § 39-2-911(2), MCA, since he failed to first exhaust Greenway's internal grievance procedures prior to filing his action in the District Court. Relying on our holding in *Eadus v. Wheatland Memorial Hospital* (1996), 279 Mont. 216, 926 P.2d 752, the District Court entered an order denying Greenway's motion on September 12, 2000. The court determined that Casiano's action was not barred by § 39-2-911, MCA, as Greenway did not provide Casiano a written copy of its internal grievance procedures within seven days after his discharge in compliance with § 39-2-911(3), MCA.

¶10 A jury trial commenced on October 16, 2000. After the jury was selected, sworn, and the venire were excused, Greenway's counsel moved to discharge the jury pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. Greenway alleged Casiano's counsel impermissibly exercised a peremptory challenge against a prospective juror based upon the prospective

3

juror's social condition as a Helena business owner.  Additionally, Greenway requested that Casiano's counsel state why a peremptory challenge was exercised against the prospective juror.  The District Court denied Greenway's motion and did not require Casiano's counsel to state the reason employed in exercising a peremptory challenge against the prospective juror.

¶11  On October 19, 2000, the jury returned a special verdict finding that Casiano was not discharged in retaliation for filing a worker's compensation claim.  The jury further found that Casiano was not discharged for good cause because Greenway violated the express provisions of its written personnel policy.  The jury awarded Casiano damages in the amount $40,908.00.

¶12  On October 26, 2000, Greenway filed a motion for judgment as a matter of law, or alternatively, for a new trial claiming there was insufficient evidence to support the jury's damage award of $40,908.00.  On November 16, 2000, the District Court denied Greenway's motion finding there was not a complete absence of credible evidence to support the jury's verdict.  On the same day, the District Court entered judgment in the amount of $43,777.33 against Greenway.  Greenway appeals.

## STANDARD OF REVIEW

¶13  Our review of a district court's grant or denial of a motion for summary judgment is de novo.  *See Eadus v. Wheatland Memorial Hospital & Nursing Home* (1996), 279 Mont. 216, 219, 926 P.2d 752, 754 (citation omitted).  Therefore, we apply the same Rule 56, M.R.Civ.P., criteria as applied by the district court.  *See Bruner*

4

*v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. Pursuant to Rule 56, M.R.Civ.P.:

> The movant must demonstrate that no genuine issues of material fact exist.
> Once this has been accomplished, the burden then shifts to the non-moving
> party to prove, by more than mere denial and speculation, that a genuine
> issue does exist. Having determined that genuine issues of fact do not
> exist, the court must then determine whether the moving party is entitled to
> judgment as a matter of law. We review the legal determinations made by
> a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264, 900 P.2d at 903 (citations omitted).

¶14 In reviewing a district court's denial of a motion to discharge the jury based upon a *Batson* challenge, we will defer to the district court's findings of fact unless clearly erroneous, and will review the district court's application of the law de novo. *See State v. Ford*, 2001 MT 230, ¶ 7, 306 Mont. 517, ¶ 7, 39 P.3d 108, ¶ 7 (citations omitted).

¶15 We will not reverse a district court's denial of a motion for judgment as a matter of law unless there is a complete absence of credible evidence to support the jury's verdict. *See Kneeland v. Luzenac America, Inc.*, 1998 MT 136, ¶ 53, 289 Mont. 201, ¶ 53, 961 P.2d 725, ¶ 53 (citations omitted). In reviewing the evidence, we view the evidence in the light most favorable to the prevailing party. *See Kneeland*, ¶ 51 (citations omitted).

¶16 We review a district court's denial of a motion for a new trial for an abuse of discretion. *Kneeland*, ¶ 54 (citation omitted).

DISCUSSION

ISSUE ONE

¶17 Did the District Court err in denying Greenway's third motion for summary judgment?

¶18 Greenway contends Casiano's wrongful discharge action is precluded by § 39-2-911(2), MCA, because Casiano failed to exhaust its internal grievance procedures prior to filing his action in the District Court. Additionally, Greenway asserts the requirements of § 39-2-911(3), MCA, were satisfied since it provided Casiano a written copy of its grievance procedures during his employment, and Jon Hoovestal, Vice President of Greenway, expressly told Casiano about its internal grievance procedures and how to facilitate such procedures on the day of his discharge. Greenway alleges that although it did not provide Casiano a written copy of its grievance procedures within seven days of his discharge, Hoovestal's oral explanation equates to supplying a copy of its grievance procedures to Casiano in compliance with § 39-2-911(3), MCA. Greenway further claims the facts presented in *Eadus* are distinguishable from the facts in this case, as there was no evidence in *Eadus* that the employer's grievance procedure was orally explained to the employee.

¶19 Casiano responds that Greenway's failure to provide him a written copy of its internal grievance procedures within seven days

6

of his discharge, as required by § 39-2-911(3), MCA, precludes Greenway from availing itself of the defense set forth in § 39-2-911(2), MCA, pursuant to our decision in *Eadus*. Casiano points out that the facts presented in *Eadus* are analogous to the facts presented in the case at hand. Most notably, the employee in *Eadus*, as here, was provided a written copy of the employer's internal grievance procedures during her employment, but was not provided another copy within seven days of her discharge. Further, the employer in *Eadus*, as here, notified the employee of its written internal grievance procedures on the day of her discharge. Casiano therefore contends we should affirm the District Court's denial of Greenway's third motion for summary judgment. We agree.

¶20 Section 39-2-911(3), MCA, states:

If the employer maintains written internal procedures under which an
employee may appeal a discharge within the organizational structure
of the employer, the employer shall within 7 days of the date of the
discharge notify the discharged employee of the existence of such
procedures *and shall supply the discharged employee with a copy of*
*them. If the employer fails to comply with this subsection, the*
*discharged employee need not comply with subsection (2).*
[Emphasis added.]

¶21 We held in *Eadus* that the plain language of § 39-2-911(3), MCA, precludes an employer from availing itself of the defense set forth in § 39-2-911(2), MCA, if the employer fails both to notify the discharged employee of its internal grievance procedures and to provide the employee a written copy of its internal grievance procedures within seven days of the employee's discharge. *See*

7

*Eadus*, 279 Mont. at 222, 926 P.2d at 756. Here, it is undisputed that Greenway notified Casiano of its internal grievance procedures on the day of his discharge, but failed to provide him a written copy of the procedures within seven days of his discharge. Consequently, we conclude that Greenway did not comply with § 39-2-911(3), MCA, and thus Casiano was not required to comply with § 39-2-911(2), MCA, prior to filing his action. Accordingly, we hold that the District Court did not err in denying Greenway's motion for summary judgment.

ISSUE TWO

¶22 Did the District Court err in denying Greenway's motion to discharge the jury?

¶23 Relying upon *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, Greenway contends its constitutional right to equal protection of the law, guaranteed by Article II, § 4, of the Montana Constitution, was denied when Casiano's counsel exercised a peremptory challenge against a prospective juror based upon the prospective juror's social condition as a Helena business owner. Greenway additionally alleges the District Court committed reversible error when it failed to require Casiano's counsel to provide reasons why it exercised a peremptory challenge against the prospective juror.

¶24 Casiano asserts a peremptory challenge may be exercised without having to explain the reason behind its utilization. Moreover, Casiano points out that *Batson* and its progeny involve discrimination of members of a cognizable racial group or a suspect

8

class in the jury selection process. Casiano thus claims that a *Batson* challenge is not applicable in the case at hand since the prospective juror excused in this case is not a member of a cognizable racial group or suspect class.

¶25 The issue of discrimination based on social condition in jury selection is a matter of first impression for this Court. The United States Supreme Court has held that the Equal Protection Clause of the United States Constitution forbids the State in criminal cases from utilizing peremptory challenges to remove potential jurors based solely on their race. *Batson*, 476 U.S. at 89, 106 S.Ct. at 1719. The Court has expanded the scope of *Batson* to forbid defendants in criminal cases and litigants in civil cases from utilizing peremptory challenges to exclude prospective jurors based on race. *See Georgia v. McCollum* (1992), 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33; and *Edmonson v. Leesville Concrete Co.* (1991), 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660. The Court further broadened the application of *Batson* to preclude the use of peremptory challenges to exclude jurors based upon their gender in *J.E.B. v. Alabama ex rel. T.B.* (1994), 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89.

¶26 We have held that "[w]hile defendants have a right 'to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria,' *Batson*, 476 U.S. at 85-86, 106 S.Ct. at 1717, this right must be exercised in a timely manner." *State v. Ford*, 2001 MT 230, ¶ 21, 306 Mont. 517, ¶ 21, 39 P.3d 108, ¶ 21 (citation omitted). Accordingly, we must address whether

9

Greenway's *Batson* challenge was timely made before we address the merits of its challenge.

¶27  We determined in *Ford* that a *Batson* challenge must be made prior to the impanelment of the jury and the dismissal of the venire to be timely.  *Ford*, ¶ 28.  In determining the point in the proceedings when a *Batson* challenge should timely be made, we noted that:

> If we allow a *Batson* challenge to be raised after the jury is impaneled and
> sworn and the venire dismissed, we not only impair the ability of the
> challenged attorney to effectively defend his or her strikes, but we also
> deprive the district court of the ability to correct any error in the proceedings
> in a timely fashion.  While we have not previously addressed the *Batson*
> challenge explicitly, the concept of requiring a substantive challenge to
> be brought while the district court still has the opportunity to cure the
> alleged defect is not novel.  We have consistently held that the purpose of
> a timely objection is to give a district judge the first opportunity to correct
> any error.

*Ford*, ¶ 27 (citations omitted).

¶28  Here, Greenway's counsel moved to discharge the jury based upon *Batson* and its progeny after the jury was selected, sworn, and the venire excused.  We note that neither counsel in this case nor the District Court had the benefit of our *Ford* decision at the time of trial.  However, our decision in *Ford* controls.  Therefore, we conclude that Greenway's *Batson* challenge was untimely.  Hence, we will not address the merits of Greenway's *Batson* challenge.

10

Accordingly, we affirm the District Court's denial of Greenway's motion to discharge the jury.

ISSUE THREE

¶29  Did the District Court err in denying Greenway's motion for judgment as a matter of law, or alternatively, for a new trial?

¶30  Greenway points out that the jury's damage award of $40,908.00 was based on the assumption that Casiano would have remained employed with the company for four years had he not been wrongfully discharged from his employment.  Greenway alleges, however, the evidence presented at trial was uncontroverted that Casiano would have been laid off due to lack of work on November 31,1998, when the Surgi-Center project was completed, as were all hourly employees.  Greenway therefore maintains the jury award should be reduced to $8,018.00, the amount of money Casiano would have earned at his hourly wage from the date of his discharge through November 31, 1998.

¶31  Casiano claims contradictory evidence was presented at trial regarding whether he would have continued to work for Greenway after the Surgi-Center project was completed. Notably, Casiano points out that Greenway continued his employment in the winter of 1997-1998 although there was not a construction project, and thus the jury could have made a reasonable inference from this evidence that Greenway would have continued his employment after completion of the Surgi-Center project.  Casiano therefore contends there was not a complete absence of credible evidence to support the jury's verdict.  We agree.

11

¶32 Further, we agree with the rationale stated by the District Court in denying Greenway's motion.  In its November 16, 2000, Order, the District Court stated:

> In looking at the evidence, the Court would acknowledge that if it was the trier of fact, it would have to agree with Defendant's argument.  However, the Court cannot say that there is a <u>complete</u> absence of credible evidence to support the jury's verdict.  The jury was in a position to judge the credibility of Defendant's witnesses and must have believed that Casiano would have continued to work for Greenway as did John Ellermeyer.  Although this Court might disagree with the jury's conclusion in this regard, it cannot say that there is a complete lack of credible evidence to support the verdict.

¶33 Since reasonable inferences could have been made from the evidence that Greenway would have continued Casiano's employment after the completion of the Surgi-Center project, we conclude there was not a complete absence of evidence to support the jury's verdict.  Accordingly, we affirm the District Court's denial of Greenway's motion for judgment as a matter of law, or alternatively, for a new trial.

¶34 We note in passing that Casiano requests the imposition of sanctions against Greenway on the grounds that Greenway's appeal was taken without substantial or reasonable grounds, pursuant to Rule 32, M.R.App.P.  After reviewing the record and the arguments made by Greenway, we conclude that sanctions are not appropriate in this case.

¶35 Affirmed.

12

                                        /S/ JIM REGNIER

We Concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE