No. 05-335

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 158

DAVID GIAMBRA and ALEXANDRIA GIAMBRA
husband and wife on behalf of their minor child,
ZADKEIL GIAMBRA,

       Plaintiffs and Appellants,

   v.

CRAIG KELSEY and CHRISTINE KELSEY,
husband and wife and NICHOLAS LELSEY,

       Defendants and Respondents.


APPEAL FROM:    The District Court of the Sixth Judicial District,
                  In and For the County of Park, Cause No. DV 2001-084,
                  Honorable W. Nels Swandal, Presiding Judge


COUNSEL OF RECORD:

      For Appellants:

          Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

      For Respondents:

          John R. Gordon, Spoon Gordon, P.C., Missoula, Montana


                         Submitted on Briefs:  January 18, 2006

                                   Decided:    June 26, 2007

Filed:

                            Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      David and Alexandria Giambra (collectively, "the Giambras") filed suit on behalf of their minor son, Zadkiel Giambra ("Zadkiel"), against Craig and Christine Kelsey (collectively, "the Kelseys") and their son, Nicholas Kelsey ("Nicholas"), in the Sixth Judicial District Court, Park County, seeking to recover damages arising out of a personal injury accident.  The Kelseys and Nicholas then filed a counterclaim against the Giambras.  Before the case was submitted to the jury, Zadkiel was added as a real party in interest.  The court then determined that the Kelseys were not negligent and dismissed them from the case.  Further, the court also determined that the Giambras were not negligent, dismissed the Kelseys' counterclaim, and dismissed the Giambras from the case.  The case then went to the jury as Zadkiel Giambra v. Nicholas Kelsey.

¶2      The jury awarded Zadkiel compensatory damages for medical expenses, but did not award compensatory damages for pain and suffering.  The jury returned a special verdict finding Zadkiel forty percent negligent and Nicholas sixty percent negligent.  Accordingly, the District Court reduced the jury's award by forty percent.  Zadkiel filed a Rule 59 Motion for a New Trial, but the District Court did not rule on this motion.[1]  Zadkiel appeals.  We affirm.

---

[1] While Zadkiel and Nicholas both refer to Zadkiel's M. R. Civ. P. Rule 59 motion as a Motion for a New Trial or JNOV (judgment notwithstanding the verdict), Rule 50 was amended by order of this Court, effective March 26, 1993, to do away with the terms "directed verdict" and "judgment notwithstanding the verdict."  "Judgment as a matter of law" is now the proper term.  *See Schumacher v. Stephens*, 1998 MT 58, ¶ 1 n.1, 288 Mont. 115, ¶ 1 n.1, 956 P.2d 76, ¶ 1 n.1; *Durden v. Hydro Flame Corporation*, 1998 MT 47, ¶ 3 n.1, 288 Mont. 1, ¶ 3 n.1, 955 P.2d 160, ¶ 3 n.1.  For purposes of this case, however, we will refer to Zadkiel's motion as a Rule 59 Motion for a New Trial.

¶3    Zadkiel states two issues on appeal, but raises a number of issues within his arguments.  We therefore restate the issues as follows:

1.  Did the District Court err when it failed to grant Zadkiel's Rule 59 Motion for a New Trial based on the jury's award of zero compensatory damages for pain and suffering?

2.  Did the District Court abuse its discretion when it refused to permit the issue of compensatory damages for emotional distress and loss of course of life to go to the jury?

3.  Did the District Court err in determining that a claim of negligence per se does not preclude the defense of contributory negligence?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    Although this Court received no trial transcript, we have discerned the following facts from the District Court exhibits and the District Court record.

¶5    This action stems from an accident which occurred on November 11, 2000, in Livingston, Montana.  Zadkiel and four other boys were sledding in Livingston on West Gallatin Street, a paved roadway, near its intersection with North Second Street.  The section of West Gallatin Street where the boys were sledding, also known as Yellowstone Hill or the North Short Hill, has a very steep incline.  West Gallatin Street was closed to vehicular traffic on November 11, 2000, because it was snow-packed and covered with glare ice.

¶6    After driving by and observing the boys sledding in the street, Christine Kelsey sent Nicholas to drive down Yellowstone Hill to tell the boys to stop sledding because it was too dangerous.  Christine was concerned that other drivers might not heed the road

3

closure signs. Nicholas was seventeen years old at the time and apparently had had his driver's license for a short amount of time.

¶7 Nicholas drove the Kelsey's full-size 1988 Ford Bronco ("the Bronco") down the hill. He stopped to speak with some of the boys and told them to stop sledding in the street. Nicholas then resumed his travel down the hill. Precisely how Zadkiel ended up in front of the Bronco is unclear. Without a transcript, we simply observe that the parties' briefs paint two different pictures. Zadkiel suggests that at approximately the same time as Nicholas resumed driving down the hill, Zadkiel got on his sled and started to sled down the hill. Nicholas posits that Zadkiel jumped on his sled in an attempt to race the Bronco to the bottom of the hill. Regardless, Zadkiel apparently then fell off of his sled in front of the Bronco that Nicholas was driving.

¶8 Nicholas did not see Zadkiel lying in the roadway and proceeded to drive forward. The right front tire of the Bronco rolled over Zadkiel's chest. Zadkiel passed under the Bronco as Nicholas struggled to stop the Bronco.

¶9 An ambulance arrived at the scene of the accident and the paramedics found Zadkiel lying on packed snow and ice. According to reports filed by the paramedics, Zadkiel experienced difficulty breathing and complained of pain in his right chest, upper abdomen, and middle back. However, Zadkiel's airway was open and there were no visible broken bones.

¶10 Zadkiel was transported via ambulance to Livingston Memorial Hospital ("Livingston Memorial"). Zadkiel apparently remained conscious and alert throughout the entire ordeal and remembered his chest being rolled over by one wheel of the Bronco.

Doctors in the emergency room at Livingston Memorial diagnosed Zadkiel with chest wall and upper abdomen trauma. A chest x-ray revealed that Zadkiel's right lung had collapsed and a CT scan confirmed that there was air and blood in his chest cavity. Zadkiel also suffered an injury to his lung causing blood to collect in the lung, a loss of normal lung structure and function, and impaired gas exchange. The CT scan revealed that the right lobe of Zadkiel's liver was bruised, torn, and bleeding.

¶11 Doctors in Livingston Memorial's emergency room inserted a tube into Zadkiel's chest and drained blood and fluid from the chest cavity. Zadkiel was given a local anesthetic and morphine for pain. He was then flown from Livingston Memorial to Billings Deaconess Hospital ("Deaconess") in an Air Ambulance.

¶12 Zadkiel's chest tube was removed on November 12, 2000. He remained in Deaconess until November 14, 2000, was discharged on a regular diet, and was not prescribed any medications. Additionally, Zadkiel was instructed to stay out of school until after Thanksgiving and to stay home for the next two weeks. Zadkiel's medical expenses were $13,480.12 in total.

¶13 The Giambras filed suit on August 9, 2001, in District Court, alleging the following in their complaint: first, that Nicholas was negligent per se in failing to comply with state statutory laws governing the operation of a motor vehicle; second, that the Kelseys were negligent in entrusting the Bronco to Nicholas; and third, that the Kelseys' actions constituted actual malice. The Giambras further alleged that Nicholas' negligence per se and the Kelsey's negligence and actual malice were the cause of Zadkiel's personal injuries, pain and suffering, and loss of course of life.

¶14 On April 29, 2004, the District Court granted the Kelseys' and Nicholas' motion to amend their original answer and assert a counterclaim against the Giambras. In their counterclaim, the Kelseys and Nicholas alleged that the Giambras knew or should have known that Zadkiel was sledding in the street and that such conduct was unlawful and dangerous. They further alleged that the Giambras were negligent in their supervision of Zadkiel. However, the Kelseys and Nicholas alleged no injury to themselves as a result of the Giambras' supposed negligence.

¶15 The parties proceeded to trial on February 16, 2005. According to the parties' appellate briefs, Nicholas admitted during the trial that he was negligent. Therefore, at the close of evidence and before the jury was instructed, the Giambras moved for partial summary judgment, based on the premise that a claim of negligence per se bars the defense of contributory negligence. The District Court denied the motion. The court noted that it would instruct the jury to decide whether Zadkiel was negligent and to what degree.

¶16 The District Court provided the following instructions, which are pertinent to the issues at hand. First, on the issue of pain and suffering, the court gave Instruction 22:

> Your award should include reasonable compensation for any pain and suffering experienced by plaintiff.
>
> The law does not set a definite standard by which to calculate compensation for mental and physical pain and suffering. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for this kind of loss. The law does require, however, that when making a finding of damages for pain and suffering, you shall exercise calm and reasonable judgment.
>
> The compensation must be just and reasonable.

¶17 Second, the District Court gave Instruction 15, which stated that "[e]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian or with any person operating a bicycle upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child upon a roadway." (This instruction was modeled after § 61-8-504, MCA, and Livingston City Ordinance 9-320.)

¶18 Third, the court gave Instruction 19:

The Livingston City Ordinances provided:

"No person shall play football, baseball, tennis, or any other game or any form of sport or amusement on any of the streets or on any of the boulevards or parkings along any of the streets of the city."

¶19 Lastly, the District Court gave Instruction 17, which stated that "[n]egligence on the part of the plaintiff does not bar his/her recovery unless such negligence was greater than the negligence of the defendant."

¶20 The jury returned a special verdict finding that Nicholas violated the rule of law set forth in Instruction 15. The jury also found that Zadkiel was negligent and that his negligence was, in part, the cause of his injuries. The jury further found that Nicholas was sixty percent negligent and Zadkiel was forty percent negligent. Lastly, the jury awarded Zadkiel compensatory damages for medical expenses, but did not award Zadkiel compensatory damages for pain and suffering. The District Court reduced the jury's award by forty percent to reflect the jury's finding that Zadkiel was forty percent negligent under the comparative negligence scheme.

¶21     On March 8, 2005, Zadkiel filed a Rule 59 Motion for a New Trial and argued that his motion should be granted for three reasons.  First, Zadkiel argued that the District Court incorrectly struck from his proposed special verdict form the damage elements of emotional distress and loss of established course of life.  Second, Zadkiel challenged the jury verdict awarding him zero compensatory damages for pain and suffering.  In his motion, Zadkiel contended that the jury's award of zero compensatory damages for pain and suffering was not supported by substantial evidence and was so unreasonable as to "shock the conscious [sic]."  Third, Zadkiel argued that the court erred in instructing the jury to apportion negligence liability between Zadkiel and Nicholas.

¶22     The District Court did not rule on the motion within sixty days and, pursuant to M. R. Civ. P. 59(d), "[i]f the court shall fail to rule on a motion for new trial within 60 days from the time the motion is filed, the motion shall, at the expiration of said period, be deemed denied."  Thus, Zadkiel's motion was deemed denied.

¶23     Although Zadkiel filed a notice of appeal on May 9, 2005, he failed to submit a trial transcript to this Court for purposes of appeal.  Zadkiel's Notice of Appeal stated that "[t]his appeal raises questions which will be reviewed de novo to determine if the [District Court] correctly applied the law and so no portions of the transcript not already on file will be ordered."  We note, however, that there are no portions of the trial transcript on file.

### STANDARD OF REVIEW

¶24     Our research concerning this Court's standard of review of a district court's ruling on a motion for a new trial, where the basis of the motion is insufficiency of the evidence,

8

has revealed incompatible standards. In *Brookings v. Thompson*, 248 Mont. 249, 811 P.2d 64 (1991), we stated that "[t]he decision to grant a new trial is within the sound discretion of the trial judge and will not be overturned absent a showing of manifest abuse of discretion." *Brookings*, 248 Mont. at 251, 811 P.2d at 65. We went on to state, however, that "[t]his Court's function is to determine if there is substantial credible evidence in the record to support the jury's verdict." *Brookings*, 248 Mont. at 251, 811 P.2d at 65. Thus, we provided for simultaneous deferential review and an independent examination of whether the verdict was supported by substantial credible evidence. We have articulated this approach in numerous other cases.[2]

---

[2] *See e.g. Seeley v. Kreitzberg Rentals, L.L.C.*, 2007 MT 97, ¶ 13, 337 Mont. 91, ¶ 13, 157 P.3d 676, ¶ 13; *Williams Feed, Inc. v. State, Dep. of Tran.*, 2007 MT 79, ¶ 17, 336 Mont. 493, ¶ 17, 155 P.3d 1228, ¶ 17; *Hoffman v. Austin*, 2006 MT 289, ¶ 13, 334 Mont. 357, ¶ 13, 147 P.3d 177, ¶ 13; *Moore v. Beye*, 2005 MT 266, ¶¶ 8-9, 329 Mont. 109, ¶¶ 8-9, 122 P.3d 1212, ¶¶ 8-9; *Satterfield v. Medlin*, 2002 MT 260, ¶¶ 13-14, 312 Mont. 234, ¶¶ 13-14, 59 P.3d 33, ¶¶ 13-14; *Chambers v. City of Helena*, 2002 MT 142, ¶ 44, 310 Mont. 241, ¶ 44, 49 P.3d 587, ¶ 44; *Stroop v. Day*, 271 Mont. 314, 317, 896 P.2d 439, 441 (1995); *Brockie v. Omo Const., Inc.*, 268 Mont. 519, 525, 887 P.2d 167, 170 (1994); *Barrett v. Larsen*, 256 Mont. 330, 338, 846 P.2d 1012, 1018 (1993); *Gass v. Hilson*, 240 Mont. 459, 462, 784 P.2d 931, 933 (1990); *Feller v. Fox*, 237 Mont. 150, 154, 772 P.2d 842, 845 (1989); *Tope v. Taylor*, 235 Mont. 124, 131-32, 768 P.2d 845, 849-50 (1988); *Walter v. Evans Products Co.*, 207 Mont. 26, 30-32, 672 P.2d 613, 616-17 (1983); *Brothers v. Town of Virginia City*, 171 Mont. 352, 358, 558 P.2d 464, 467 (1976).

We also note that we have articulated alternate versions of this approach. For instance, in *State v. Longhorn*, 2002 MT 135, 310 Mont. 172, 49 P.3d 48, we stated that the trial court's decision to grant a new trial or modify or change a verdict "must be justified by the law and the weight of the evidence" and that we review a district court's decision on a motion for a new trial for "abuse of discretion" (as opposed to "manifest abuse of discretion"). *Longhorn*, ¶ 47. Likewise, in *Casiano v. Greenway Enterprises, Inc.*, 2002 MT 93, 309 Mont. 358, 47 P.3d 432, we stated that we review a district court's denial of a motion for a new trial for "abuse of discretion." *Casiano*, ¶ 16.

¶25 Our thinking behind this approach is illustrated by our decision in *Barnes v. United Industry, Inc.*, 275 Mont. 25, 909 P.2d 700 (1996), where we reasoned that "the District Court showed no abuse of discretion because there was sufficient evidence to support the jury's verdict." *Barnes*, 275 Mont. at 34, 909 P.2d at 706. This reasoning, however, is dubious given our recent clarification of the nature of a district court's determination concerning the sufficiency of the evidence.

¶26 "A district court may grant a motion for a new trial if there is insufficient evidence to justify the jury's verdict." *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 43, 293 Mont. 97, ¶ 43, 973 P.2d 818, ¶ 43 (citing § 25-11-102(6), MCA). "Conversely, where substantial evidence supports a verdict, the verdict generally cannot be overturned or vacated." *Thompson v. City of Bozeman*, 284 Mont. 440, 442, 945 P.2d 48, 49 (1997) (citing *Thayer v. Hicks*, 243 Mont. 138, 156, 793 P.2d 784, 795 (1990)). In *Johnson v. Costco Wholesale*, 2007 MT 43, 336 Mont. 105, 152 P.3d 727, in the context of clarifying our standard of review of a district court's ruling on a motion for judgment as a matter of law, we characterized "the assessment of the sufficiency of the evidence" as a question of law. *Johnson*, ¶ 19. We further explained:

> Since the assessment of the sufficiency of the evidence and the application of the law to that assessment cannot involve discretion—i.e., since no deference is given to the trial court—the question is one of law to which the *de novo* or plenary standard of review applies.

*Johnson*, ¶ 19. Likewise, in *State v. Swann*, 2007 MT 126, ___ Mont. ___, ___ P.3d ___, in the context of discussing the directed verdict statute (§ 46-16-403, MCA), we clarified

10

the nature of a district court's determination concerning the sufficiency of the evidence as follows:

> A District Court's conclusion as to whether sufficient evidence exists to convict is ultimately an analysis and application of the law to the facts, and as such is properly reviewed *de novo*. There either is, or is not, sufficient evidence to convict, and the determination is not a matter of discretion. Consequently, we now hold that the proper standard of review for denial of a motion for a directed verdict is *de novo*. We overrule our prior cases to the extent they stand for a different standard of review.

*Swann*, ¶ 19. The reasoning of *Johnson* and *Swann* applies equally to a motion for a new trial based on insufficiency of the evidence. *See State v. Berger*, 1998 MT 170, ¶ 25, 290 Mont. 78, ¶ 25, 964 P.2d 725, ¶ 25 ("We review the denial of a motion for directed verdict in the same manner that we review the sufficiency of evidence to support a conviction."). There either is, or is not, sufficient evidence to support the verdict, and this determination is not a matter of discretion.

¶27 Accordingly, we overrule the cases cited in ¶¶ 24-25 and footnote 2 above, to the extent those cases state our standard of review of a district court's ruling on a motion for a new trial, where the basis of the motion is insufficiency of the evidence, as manifest abuse of discretion (or simply abuse of discretion). Our review of a district court's ruling on a motion for a new trial where the basis of the motion is insufficiency of the evidence is de novo. Like the district court, we determine whether there was substantial evidence to support the verdict. *Renville v. Taylor*, 2000 MT 217, ¶ 14, 301 Mont. 99, ¶ 14, 7 P.3d 400, ¶ 14 (citing *Brockie*, 268 Mont. at 522, 887 P.2d at 169).

¶28 The use of a special verdict form, by contrast, is a discretionary trial court ruling, which we review for abuse of discretion. *Ele v. Ehnes*, 2003 MT 131, ¶ 18, 316 Mont.

11

69, ¶ 18, 68 P.3d 835, ¶ 18 (citing *Barthule v. Karman*, 268 Mont. 477, 488, 886 P.2d 971, 978 (1994)).  Likewise, we review a district court's decision to give or refuse to give proffered jury instructions for an abuse of discretion.  *Bugger v. McGough*, 2006 MT 248, ¶ 20, 334 Mont. 77, ¶ 20, 144 P.3d 802, ¶ 20 (citing *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶¶ 57, 62, 312 Mont. 52, ¶¶ 57, 62, 57 P.3d 836, ¶¶ 57, 62). Finally, we review a district court's conclusions of law de novo to determine whether they are correct.  *Shults v. Liberty Cove, Inc.*, 2006 MT 247, ¶ 9, 334 Mont. 70, ¶ 9, 146 P.3d 710, ¶ 9; *State v. Boulton*, 2006 MT 170, ¶ 10, 332 Mont. 538, ¶ 10, 140 P.3d 482, ¶ 10 (citing *State v. Ray*, 2003 MT 171, ¶ 34, 316 Mont. 354, ¶ 34, 71 P.3d 1247, ¶ 34).

## DISCUSSION

¶29  *1. Did the District Court err when it failed to grant Zadkiel's Rule 59 Motion for a New Trial based on the jury's award of zero compensatory damages for pain and suffering?*

¶30  Zadkiel based his Rule 59 Motion for a New Trial, in part, on the jury's award of zero compensatory damages for pain and suffering.  Zadkiel cites *Renville v. Taylor*, 2000 MT 217, 301 Mont. 99, 7 P.3d 400, and *Thompson v. City of Bozeman*, 284 Mont. 440, 945 P.2d 48 (1997), to support his assertion that the District Court erred in not granting this motion.  "We have previously held that 'where a jury fails to award any damages when the only *evidence of record* supports an award, that verdict is not supported by substantial evidence and may be set aside.' "  *Renville*, ¶ 24 (emphasis added) (citing *Thompson*, 284 Mont. at 446, 945 P.2d at 52).

¶31  Zadkiel argues that his Rule 59 Motion for a New Trial was well-supported by uncontroverted and uncontradicted evidence of pain and suffering.  Indeed, Zadkiel

12

asserts no less than fourteen times (but without corresponding citations to the record) that the evidence of his pain and suffering was uncontroverted. Zadkiel additionally repeats at least twelve times that the undisputed result of Zadkiel's being driven over by the Bronco was injuries to his lung and liver. Therefore, Zadkiel maintains, the jury's award of zero compensatory damages for pain and suffering was not supported by, and was in fact contrary to, the evidence.

¶32 To support this rather lofty proposition without a trial transcript, Zadkiel notes that the District Court received hundreds of pages of medical records and bills that documented the precise nature and consequences of the injuries Zadkiel suffered after being run over by the Bronco. Zadkiel further notes that the jury heard testimony from, among others, the Giambras, doctors at Livingston Memorial, and Officer Dale Johnson, the police officer who responded to the accident.

¶33 Additionally, Zadkiel contends that a new trial is necessary to protect his constitutional guarantee to full legal redress, based on § 25-11-102(6), MCA, which states that a verdict may be vacated and a new trial granted for "insufficiency of the evidence to justify the verdict." Again, Zadkiel argues generally that the evidence of pain and suffering was uncontroverted and that a jury cannot disregard the evidence and award nothing for pain and suffering.

¶34 In response to Zadkiel's contentions that evidence of his pain and suffering was uncontradicted and that there exists substantial credible evidence of pain and suffering, Nicholas argues that M. R. App. P. 9(b), required Zadkiel to submit a trial transcript to

13

this Court or follow the alternative procedures set forth in M. R. App. P. 9(b). M. R. App. P. 9(b) states:

> Absent a stipulation filed with the clerks of the supreme court and the district court pursuant to Rule 54(c), within 10 days after filing the notice of appeal the appellant shall order from the reporter a transcript of all the proceedings not already on file for inclusion in the record.

We note, however, that if, as in the case at hand, "the appellant determines, on the basis of the issues raised on appeal, that the entire transcript is not necessary," the appellant must do three things within the ten day period provided by Rule 9: first, the appellant must order the parts of the transcript that the appellant deems necessary for the appeal; second, the appellant must serve on the respondent a description of the parts of the transcript the appellant deems unnecessary for the appeal; and third, the appellant must serve on the respondent a statement of the issues which the appellant intends to present on appeal. M. R. App. P. 9(b). Nicholas notes that Zadkiel did not follow these alternative procedures.

¶35 Aside from the mandate of Rule 9, Nicholas points out that Zadkiel's appellate brief does not conform to his Notice of Appeal. Namely, Zadkiel's Notice of Appeal states that only issues of law will be raised on appeal; however, Zadkiel argues in his brief that there exists substantial credible evidence of pain and suffering. Nicholas maintains, therefore, that Zadkiel has asked this Court to overturn a jury verdict and order a new trial without allowing this Court to review the trial transcript. Nicholas notes, ironically, that this Court is not even able to review Zadkiel's statements about his own purported pain and suffering because a transcript of Zadkiel's testimony on this issue

14

does not appear in the District Court record. Finally, Nicholas argues that if this Court were to overturn the jury's verdict, this Court would be basing its decision solely on Zadkiel's counsel's own assumption that compensable pain and suffering occurred.

¶36 Nicholas' arguments are well-taken. M. R. App. P. 9(a) provides that

> [i]t is the duty of a party seeking review of a judgment, order or proceeding to present the supreme court with a record sufficient to enable it to rule upon the issues raised. Failure to present the court with a sufficient record on appeal may result in dismissal of the appeal and/or the imposition of some other appropriate sanction.

We have repeatedly stated that if an appellant seeks to challenge the sufficiency of the evidence supporting a verdict, the appellant must provide this Court with a trial transcript, sufficient portions of a trial transcript, or a record sufficient to enable this Court to rule upon the issues raised. *See Gentry Montana Enterprises, Inc. v. McDonald*, 2004 MT 322, ¶ 39, 324 Mont. 67, ¶ 39, 101 P.3d 767, ¶ 39; *Huffine v. Boylan*, 239 Mont. 515, 517, 782 P.2d 77, 78 (1989); *Harrington v. Harrington*, 181 Mont. 541, 542, 594 P.2d 319, 320 (1979); *Yetter v. Kennedy*, 175 Mont. 1, 5-7, 571 P.2d 1152, 1155-56 (1977). " '[T]he burden of showing error by reference to matters of record is upon the appellant.' " *Huffine*, 239 Mont. at 517, 782 P.2d at 78 (quoting *Yetter*, 175 Mont. at 7, 571 P.2d at 1156). In this case, Zadkiel relies on District Court minutes and evidence of his *injuries*, as opposed to evidence of *pain and suffering*, to support his claim that there exists uncontroverted evidence of pain and suffering. This Court has sifted through each page of an approximately 390-page District Court record and another 150 pages of medical records, bills, and exhibits and, except as referred to in ¶ 9, has discovered no other evidence of pain and suffering. Thus, the trial transcript was essential to this

15

appeal. We therefore cannot address the merits of Zadkiel's appeal with regards to this issue.[3]

¶37  *2. Did the District Court abuse its discretion when it refused to permit the issue of compensatory damages for emotional distress and loss of course of life to go to the jury?*

¶38  Zadkiel argues that he was "entitled to have the jury consider a monetary award for the general damages of emotional distress and loss of course of life." Zadkiel informs us that the District Court indicated that it would not allow the jury to consider awarding compensatory damages for emotional distress and loss of course of life. Zadkiel's brief directs this Court to the District Court minutes, but at the same time acknowledges that the minutes contain no entry describing the District Court's decision on this matter. According to Zadkiel, "[c]learly having one's lung crushed, liver lacerated and remaining hospitalized for a period of days has the natural and inescapable consequence of causing

___

[3] We note that this is not the first time that Geoffrey C. Angel, counsel for Zadkiel, has failed to provide materials essential to his client's appeal. *See Bugger v. McGough*, 2006 MT 248, ¶ 44, 334 Mont. 77, ¶ 44, 144 P.3d 802, ¶ 44 (noting that this Court was unable to address the issue of whether the District Court abused its discretion in awarding attorney's fees and costs to the respondent because Mr. Angel did not provide us with a trial transcript); *Rolison v. Bozeman Deaconess Health Services, Inc.*, 2005 MT 95, ¶ 32, 326 Mont. 491, ¶ 32, 111 P.3d 202, ¶ 32 (stating that this Court could not address appellant's evidentiary argument without an adequate record); *Stafford v. State*, 2004 MT 96N, ¶ 27, 322 Mont. 528 (Table), 94 P.3d 765 (Table) (concluding that this Court could not review an abuse of discretion argument because a transcript was not provided); *In re Marriage of Hodge*, 2003 MT 146, ¶ 7, 316 Mont. 194, ¶ 7, 69 P.3d 1192, ¶ 7 (explaining that because appellant did not provide a trial transcript, appellant was precluded from arguing insufficiency of the evidence). We note that in *Rolison*, as in the case at hand, the appellant referred to district court minute entries instead of a trial transcript to support his claim on appeal. *Rolison,* ¶ 32. In *Rolison*, we stated explicitly that minute entries were not a sufficient record with which to review testimony or address an evidentiary argument. *Rolison*, ¶ 32. Unfortunately, this case marks the fifth time in the past three years that Mr. Angel has neglected to provide this Court with materials essential his client's appeal.

emotional distress and a loss of course of life." Further, Zadkiel suggests that "[r]easonable men and women could reach no other conclusion" and therefore, the District Court abused its discretion in refusing to allow the jury to award compensatory damages for emotional distress and loss of course of life on the special verdict form. He argues that because the evidence of his emotional distress and loss of course of life is supposedly uncontroverted, this Court must reverse and order a new trial.

¶39 Additionally, Zadkiel contends that the District Court's decision to refuse to allow the jury to award compensatory damages for emotional distress and loss of course of life violated Zadkiel's constitutional right to full legal redress. According to Zadkiel, Article II, Section 16 of the Montana Constitution provides for a "mandatory and self-executing" guarantee of full legal redress. He cites *Hill v. Chappel Bros. of Montana*, 93 Mont. 92, 18 P.2d 1106 (1932), for his contention that the guarantee of full legal redress includes the right to be compensated for special damages and all cognizable general damages which naturally and necessarily result from an injury. Zadkiel maintains that because the evidence of his injuries was uncontroverted, his injuries "necessarily and naturally" caused "some inevitable degree of emotional distress and disruption of the natural course of life." Therefore, according to Zadkiel, the jury was required to award compensatory damages for emotional distress and loss of course of life and the District Court violated his constitutional right to full legal redress by not allowing the jury to do so.

¶40 In response, Nicholas reiterates that Zadkiel has not provided this Court with a trial transcript. Nicholas argues that, once again, Zadkiel is attempting to challenge the sufficiency of the evidence without providing this Court with a sufficient record upon

17

which to rule. Further, Nicholas asserts that Zadkiel did not even offer any instructions on compensatory damages for emotional distress or loss of course of life. According to Nicholas, Zadkiel offered seven proposed jury instructions, but these seven instructions did not address issues of emotional distress or loss of course of life. Nicholas cites M. R. Civ. P. 51, which states that "[n]o party may assign as error the failure to instruct on any point of law unless that party offers an instruction thereon." Alternatively, Nicholas argues that the evidence suggests that Zadkiel did not suffer any permanent injury or loss of course of life. Finally, contrary to Zadkiel's assertion that the right to recover compensatory damages for emotional distress and loss of course of life is "mandatory and self-executing," Nicholas maintains that Zadkiel must prove his claim by a preponderance of the evidence.

¶41 As stated above, we review a district court's decision to give or refuse to give proffered jury instructions and to use a special verdict form for an abuse of discretion. Because Zadkiel did not supply a transcript for purposes of this appeal, because he did not offer jury instructions on this claim, and because his proposed special verdict form is not in the record, we will not consider his claim on appeal that the District Court's decision not to allow the jury to award compensatory damages for emotional distress and loss of course of life was an abuse of discretion and violated his constitutional right to full legal redress. We therefore decline to address the merits of Zadkiel's appeal with regards to this issue.

¶42 *3. Did the District Court err in determining that a claim of negligence per se does not preclude the defense of contributory negligence?*

18

¶43    Zadkiel argues that the defense of contributory negligence is not available in a negligence per se case; therefore, Zadkiel contends, a jury instruction on contributory negligence is inapplicable when a party proceeds under a claim of negligence per se and that there is no apportionment of negligence liability when the fact-finder determines that a party has been negligent per se.  The crux of Nicholas' arguments in response is that a claimed statutory violation which constitutes negligence per se or the determination that a party to an action has been negligent per se does not bar the defense of contributory negligence unless the statute so specifies.  As a preliminary matter, we set forth the background of the law of contributory negligence, comparative negligence, and negligence per se.

¶44    Contributory negligence is "conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection."  W. Page Keeton et al., *The Law of Torts*, § 65, at 451 (5th ed., West 1984).  The traditional rule is that contributory negligence was a complete bar to the plaintiff's claim.  Dan B. Dobbs, *The Law of Torts* vol. 1, § 199, at 494 (West 2001); *see also Reed v. Little*, 209 Mont. 199, 205, 680 P.2d 937, 941 (1984) (stating that "[u]nder the old contributory negligence rule, a plaintiff could not recover if the plaintiff were negligent in any degree").  However, "[c]omparative negligence compares the conduct of the parties 'based on evidence and contributory negligence, as established by reasonable and prudent person standards.' "[4]  *Faulconbridge v. State*, 2006

---

[4] Modern comparative negligence law has its roots in the Federal Employers' Liability Act, which was enacted by Congress in 1908.  Dobbs, *The Law of Torts* § 201, at 503.

MT 198, ¶ 99, 333 Mont. 186, ¶ 99, 142 P.3d 777, ¶ 99 (quoting *Lewis v. Puget Sound Power & Light Co.*, 2001 MT 145, ¶ 25, 306 Mont. 37, ¶ 25, 29 P.3d 1028, ¶ 25). Under a pure comparative negligence scheme, "no plaintiff is completely barred from recovery because of her contributory negligence." Dobbs, *The Law of Torts* § 201, at 505.

¶45 The Montana Legislature first adopted the comparative negligence rule in 1975. *Reed*, 209 Mont. at 203, 680 P.2d at 939. As now codified in § 27-1-702, MCA, in Montana, a plaintiff's contributory negligence is a defense to a charge of negligence, but "[c]ontributory negligence does not bar recovery in an action by a person" unless that person's contributory negligence was "greater than the negligence of the person or the combined negligence of all persons against whom recovery is sought." Therefore, Montana's comparative negligence scheme employs the "greater-than" version of comparative negligence. *See* Dobbs, *The Law of Torts* § 201, at 505. Under § 27-1-702, MCA, a plaintiff may not recover if the plaintiff is found to be greater than fifty percent negligent.

¶46 Negligence per se is simply "[n]egligence established as a matter of law," and negligence per se usually "arises from a statutory violation." *Black's Law Dictionary* 1057 (Bryan A. Garner ed., 7th ed., West 1999).

> One key distinction between negligence *per se* and ordinary negligence is that once a violation of a statute is proven, and the standards under *VanLuchene* [reciting the five criteria that a plaintiff must prove in a negligence per se case in order to prevail] are met, a defendant is negligent, as a matter of law. This contrasts to ordinary or common law negligence where the element of duty is a question of law, but the element of breach is generally a question of fact suitable for resolution by the fact finder at trial.

20

*Estate of Schwabe v. Custer's Inn*, 2000 MT 325, ¶ 25, 303 Mont. 15, ¶ 25, 15 P.3d 903, ¶ 25 (citing *Estate of Strever v. Cline*, 278 Mont. 165, 175, 924 P.2d 666, 672 (1996)). Additionally,

> [t]he effect of such a rule [negligence per se] is to stamp the defendant's conduct as negligence, with all of the effects of common law negligence, but with no greater effect. There will still remain open such questions as the causal relationship between the violation and the harm to the plaintiff, and, in the ordinary case, *the defenses of contributory negligence*, and assumption of the risk.

Keeton, *The Law of Torts* § 36, at 230 (footnotes omitted) (emphasis added).

¶47 Zadkiel argues that the District Court erred when it failed to grant his Rule 59 Motion for a New Trial on the ground that the court inappropriately instructed the jury to consider the question of Zadkiel's negligence, when Nicholas had already admitted that he was negligent. Zadkiel maintains that his claim of negligence per se against Nicholas precludes an instruction on the defense of contributory negligence and bars the apportionment of negligence liability through a comparative negligence scheme. In addition, Zadkiel contends that the jury found that Nicholas was negligent per se when the jury returned the special verdict form stating that Nicholas violated the rule of law set forth in Instruction 15. Zadkiel argues that the jury's determination that Nicholas was negligent per se requires the District Court to award Zadkiel the full amount of compensatory damages for medical expenses awarded by the jury, not the amount of compensatory damages awarded by the jury reduced by forty percent.

¶48 In response, Nicholas maintains that this Court's discussion of negligence per se and comparative negligence in the context of traffic statutes in *Reed* should control in this

case and, therefore, that a violation of a traffic statute which constitutes negligence per se should not bar the defense of contributory negligence. In *Reed*, this Court held that "the defense of contributory negligence on plaintiff's part is available to a defendant who has violated a traffic statute." *Reed*, 209 Mont. at 206, 680 P.2d at 940. This Court further noted that "[t]he fact that both parties may well have been guilty of statutory violations is a further reason for leaving the comparison of the negligence to the jury in this case." *Reed*, 209 Mont. at 207, 680 P.2d at 941. According to Nicholas, the *Reed* Court analyzed § 27-1-702, MCA, and determined that even if a party violates a statute, both parties to an action can still be found partially responsible under Montana's comparative negligence scheme.

¶49   We agree with Nicholas' assertion that the violation of a traffic statute which constitutes negligence per se does not bar the defense of contributory negligence. In *Reed*, plaintiffs' car was rear-ended when plaintiffs stopped suddenly after starting to drive through an intersection. *Reed*, 209 Mont. at 201-02, 680 P.2d at 938. Defendant violated § 61-8-329(1), MCA, which provides that "[t]he driver of a motor vehicle may not follow another vehicle more closely than is reasonable and prudent." The jury returned a special verdict finding plaintiffs ninety percent negligent and defendant ten percent negligent. *Reed*, 209 Mont. at 202, 680 P.2d at 938-39. On appeal, plaintiffs argued that "negligence per se cannot be compared to ordinary negligence and that negligence per se can only be compared where both parties are guilty of statutory violations." *Reed*, 209 Mont. at 204, 680 P.2d at 939. In response, defendant argued that "the defense of contributory negligence is still appropriate, leaving to the jury the

comparison of the degree of negligence on the part of both parties." *Reed*, 209 Mont. at 204, 680 P.2d at 939. We held that under Montana's comparative negligence scheme, "the jury must consider evidence of negligence from violation of a highway traffic statute, which was a proximate cause of the accident, with other evidence of negligence on the part of both parties. The jury must then weigh or compare the negligence of both parties in reaching its verdict." *Reed*, 209 Mont. at 207, 680 P.2d at 941.

¶50 We reaffirmed this holding in *Edie v. Gray*, 2005 MT 224, 328 Mont. 354, 121 P.3d 516. In *Edie*, this Court addressed plaintiffs' claim that a finding of negligence per se bars the defense of contributory negligence and precludes the apportionment of negligence liability through a comparative negligence scheme. Plaintiffs argued that "comparative negligence was not an issue in this case because Gray was negligent per se." *Edie*, ¶ 18. Relying on *Reed*, we stated the same general proposition that "even in negligence *per se* cases, the fact finder must apportion negligence between the two parties in reaching its verdict." *Edie*, ¶ 19 (citing *Reed*, 209 Mont. at 206-07, 680 P.2d at 940-41).

¶51 Accordingly, in light of *Reed* and *Edie*, we now reaffirm the relationship between negligence per se and the apportionment of negligence liability under a comparative negligence scheme. We hold that Montana's comparative negligence scheme set forth in §§ 27-1-702 and -703, MCA, requires the fact-finder to consider the negligence of the claimant, injured person, defendants, and third-party defendants, even if a party proceeds under a claim of negligence per se or if the fact-finder determines that one or more persons was negligent per se. In the absence of an express statutory provision to the

23

contrary, a claim of negligence per se or a determination that a person was negligent per se does not preclude the defense of contributory negligence or bar the apportionment of negligence liability based on a comparative negligence scheme.

¶52 Before concluding, it is necessary to address two additional arguments raised by Zadkiel. First, Zadkiel cites the following language from *Estate of Schwabe v. Custer's Inn*, 2000 MT 325, ¶ 25, 303 Mont. 15, ¶ 25, 15 P.3d 903, ¶ 25, to support his assertion that a claim of negligence per se bars the defense of contributory negligence: "The breach of a statutory duty, under a negligence *per se* claim, may also carry the added advantage of foreclosing common law defenses." Nicholas responds that this language is dicta. He argues that regardless of the gratuitous nature of this statement, the *Schwabe* Court was relying on cases that dealt with the Montana Scaffolding Act, which did not allow for the apportionment of negligence liability. Therefore, Nicholas suggests, this Court's analysis in *Schwabe* does not bear on the facts of this case.

¶53 We agree with Nicholas. In *Schwabe*, this Court reviewed a district court's determination that even if the defendant ("Custer's Inn") violated safety statutes or regulations, the plaintiff ("the Estate") failed to demonstrate that the alleged negligence per se was the proximate cause of the drowning death of Mark Schwabe. *Schwabe*, ¶ 22. We stated that "[u]nder either theory of negligence [common law negligence or negligence per se], if the defendant's conduct did not cause the alleged damages, the plaintiff's claim must fail as a matter of law." *Schwabe*, ¶ 27.

¶54 In articulating the difference between common law negligence and negligence per se, we stated that "[t]he breach of a statutory duty, under a negligence *per se* claim, may

24

also carry the added advantage of foreclosing common law defenses." *Schwabe*, ¶ 25 (citing *Steiner v. Department of Highways*, 269 Mont. 270, 278, 887 P.2d 1228, 1233 (1994), in turn quoting *Pollard v. Todd*, 148 Mont. 171, 179-80, 418 P.2d 869, 873 (1966)). However, this general observation was unnecessary to this Court's decision that under either a negligence per se claim or a common law negligence claim, the Estate failed to establish any material fact dispute that the conduct of Custer's Inn was the proximate cause of Mark Schwabe's death. As such, it is dicta.

¶55 More importantly, the foregoing statement in *Schwabe*, which relies on *Steiner* and *Pollard*, is dubious given the 1995 amendment to the Scaffolding Act, which was the basis of *Steiner* and *Pollard*. The Scaffolding Act, first set forth in § 69-1401, R.C.M., 1947, provides certain requirements for the construction of scaffolds to "insure the safety of persons working thereon or passing thereunder." In *Pollard*, we held that the purpose of § 69-1401, R.C.M., 1947, was to impose "an absolute statutory duty upon the owners of real estate to protect workmen and others from the extraordinary hazards associated with scaffolds." *Pollard*, 148 Mont. at 179, 418 P.2d at 873. Therefore, we stated that "[t]he mandatory nature of the statute forecloses the common-law defenses of assumption of the risk, contributory negligence, and negligence of a fellow servant." *Pollard*, 148 Mont. at 179-80, 418 P.2d at 873.

¶56 In *Steiner*, we noted that "the breach of a contractual duty to assure that the subcontractor has provided appropriate scaffolding" involved provisions of the Scaffolding Act. *Steiner*, 269 Mont. at 278, 887 P.2d at 1233. The failure of the Montana Department of Highways ("MDOH") "to comply with the provisions of the

25

Montana Scaffolding Act was negligence per se." *Steiner*, 269 Mont. at 278, 887 P.2d at 1233-34. Even though Steiner was contributorily negligent, and although "his gross negligence was more than 50 percent of the total negligence," this Court held that, based on *Pollard*, a defense of contributory negligence was not available to MDOH. *Steiner*, 269 Mont. at 278, 887 P.2d at 1233-34.

¶57 In 1995, the Montana Legislature amended the Scaffolding Act, then codified as § 50-77-101, MCA. The revised language stated, in pertinent part, that "[s]ubject to the comparative negligence principles provided in Title 27, chapter 1, part 7, a contractor, subcontractor, or builder who uses or constructs a scaffold on a construction site is liable for damages sustained by any person who uses the scaffold." In effect, the 1995 revisions made the Scaffolding Act subject to the comparative negligence scheme codified in § 27-1-702, MCA. The holding of *Pollard*, repeated in *Steiner* and *Schwabe*, that the breach of a statutory duty under a negligence per se claim may also foreclose the common law defense of contributory negligence, was therefore abrogated by the 1995 amendment to the Scaffolding Act.

¶58 Nicholas argues, and we agree, that Zadkiel's assertion that the reasoning of *Pollard*, *Steiner*, and *Schwabe* precluded the District Court from instructing the jury to apportion negligence liability between Nicholas and Zadkiel is without merit. In the absence of an express statutory declaration that makes §§ 27-1-702 and -703, MCA, inapplicable, a claim of negligence per se or a determination that a person was negligent per se does not preclude the defense of contributory negligence or bar the apportionment of negligence liability based on a comparative negligence scheme. The statement in

26

*Schwabe* that "[t]he breach of a statutory duty, under a negligence *per se* claim, may also carry the added advantage of foreclosing common law defenses," *Schwabe*, ¶ 25, is overruled.

¶59 Second, Zadkiel relies on *Woods v. Burlington Northern and Santa Fe Ry.*, 2004 MT 332, 324 Mont. 151, 104 P.3d 1037, to support his contention that a claim of negligence per se precludes an instruction on the defense of contributory negligence. According to Zadkiel, he based his argument against the District Court instructing on the defense of contributory negligence on the "latest authority on the statutory liability of negligence per se" as follows:

> Nicholas Kelsey was negligent per se for failing to use the proper precaution and negligent per se for failing to give a warning of his intentions when children were present in and around the roadway. Negligence per se is a bar to claims of contributory and comparative negligence. *Woods v. Burlington Northern and Santa Fe Ry.*, 2004 MT 332, 324 Mont. 151, 104 P.2d 1037. The contributory negligence instructions are inapplicable.

¶60 Nicholas responds by contending that *Woods* is distinguishable from the case at hand. Nicholas notes that *Woods* involved the Federal Employers' Liability Act ("FELA"). Nicholas argues that *Woods* should be limited to its facts because FELA specifically provides that a violation of its regulations constitutes negligence per se and explicitly precludes the defense of contributory negligence in FELA cases.

¶61 We agree with Nicholas that this Court's reasoning in *Woods* is not applicable to this case. Although FELA statutorily precludes the defense of contributory negligence when a common carrier (such as a railroad, in *Woods*) violates a safety statute, FELA does not otherwise preclude the defense of contributory negligence or bar the

apportionment of negligence liability based on a comparative negligence scheme. More importantly, although FELA expressly declares that the defense of contributory negligence is precluded in certain situations, the language of FELA simply does not apply in this case.

## CONCLUSION

¶62 We conclude that because Zadkiel did not provide this Court with a trial transcript, we are unable to review the sufficiency of the evidence supporting the jury's decision to award Zadkiel zero compensatory damages for pain and suffering. Similarly, we are also unable to review the District Court's decision to refuse to permit the issue of compensatory damages for emotional distress and loss of course of life to go to the jury. We hold that the District Court correctly determined that, under §§ 27-1-702 and -703, MCA, the jury was required to consider the negligence of both Zadkiel and Nicholas in apportioning negligence liability under the comparative negligence scheme. Accordingly, we affirm the District Court's March 1, 2005 judgment.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE