IN THE SUPREME COURT OF THE STATE OF MONTANA


No. 97-082

1998 MT 58



GARY W. SCHUMACHER, as Trustee for the
GARY W. SCHUMACHER REVOCABLE
TRUST, and BRYAN SCHUMACHER, as
Trustee for the MILTON C. SCHUMACHER
TRUST FOR GARY,

Plaintiffs and Appellants,
v.

ROBERT STEPHENS, JR.,

Defendant and Respondent.



APPEAL FROM:   District Court of the Ninth Judicial District,
In and for the County of Teton,
The Honorable Marc G. Buyske, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Alan J. Lerner, Kalispell, Montana; Stuart F. Lewin, Great
Falls, Montana

For Respondent:

Floyd D. Corder, Corder & Allen, Great Falls, Montana



Submitted on Briefs: June 19, 1997

Decided: March 17, 1998
Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Appellants Gary Schumacher, as Trustee for the Gary W. Schumacher Revocable Trust, and Bryan Schumacher, as Trustee for the Milton C. Schumacher Trust for Gary, (Schumachers) filed an action against Robert Stephens, Jr. (Stephens) under a crop-share/ cash-payment farm lease. Schumachers alleged claims for conversion and breach of contract concerning both the winter-wheat production and the spring-wheat production.  At the close of Schumacher's case, the District Court for the Ninth Judicial District, Teton County, granted Stephens' Rule 50, M.R.Civ.P., motion for a directed verdict (judgment as a matter of law) as to the breach of contract claim concerning the winter-wheat production and both conversion claims.  The breach of contract claim concerning the spring-wheat production was submitted to the jury and a unanimous verdict was returned in favor of Stephens.  Schumachers appeal the District Court's grant of judgment as a matter of law on the conversion claims and the jury verdict concerning the breach of contract claim for the spring-wheat production.  Schumachers do not appeal the District Court's grant of judgment as a matter of law on the breach of contract claim for the winter-wheat production.  We affirm.

¶2    Schumachers raise the following issues on appeal:

¶3    1.  Did the District Court err by granting judgment as a matter of  law against Schumachers on their conversion claims?

¶4    2.  Did the District Court err by failing to instruct the jury that the lease agreements contained implied covenants obligating Stephens to perform the farming in a competent, skilled, workmanlike and husbandlike fashion?

¶5    3.  Did the District Court err by failing to instruct the jury that the material participation agreements contained an implied covenant obligating Stephens to cooperate with Schumachers?

Factual and Procedural Background

¶6    The land that is the subject of this litigation was owned by Schumachers.  Gary Schumacher (Gary) farmed the land from 1958 until 1990.  Due to financial difficulties, Schumachers sold their farming equipment in 1990 and hired others to farm the land in 1990 and 1991.  Stephens owns, or has an interest in, farms and pasture land in Lewis and Clark, Teton, Pondera, and Cascade Counties.

¶7    In March 1992, Schumachers and Stephens entered into two almost

identical lease agreements providing for the farming of Schumachers' land. Attached to each lease and incorporated therein by reference was a "material participation agreement" which provided for Gary's participation in management decisions regarding crop production on the leased land and in the general operation of the farm. Each lease was for a designated portion of the land with the total under both leases consisting of more than 1700 acres. The leases provided that Stephens would pay Schumachers $40,000 per year along with one-third of the proceeds from the crop if it exceeded $120,000. The leases covered the 1992, 1993 and 1994 crop years and were to automatically terminate on September 1, 1994. Because the 1992 crop was ruined by a drought and because the property was sold in December 1993, the only crop year at issue in this case is 1993.

¶8 Stephens paid Schumachers $40,000 in 1993 for that crop year and an additional $3,000 in advance for the 1994 crop year. Stephens did not pay Schumachers any additional amounts for crop produced and sold because he contended that he produced only 28,161 bushels of winter wheat, for which he received $81,681.38, and only 19,160 bushels of spring wheat, for which he received $44,383.12. Thus, Stephens maintained that no additional amounts were due Schumachers since one third of the total crop receipts of $126,064.50 was less than the $43,000 Stephens had already paid Schumachers.

¶9 On September 2, 1994, Schumachers filed a complaint against Stephens alleging conversion and breach of contract. Schumachers contended that the amount of grain Stephens claimed to have produced on the leased land did not reflect the amount of grain actually produced as evidenced by several factors including: the Federal Crop Insurance reports submitted by Stephens in 1993; a visual examination by Gary of the grain bins after each harvest; and the amount of grain Schumachers' neighbors were able to produce on adjacent land during the same crop year.

¶10 A jury trial was held September 30, 1996 through October 4, 1996. At the close of Schumachers' case-in-chief, the District Court granted Stephens' motion for judgment as a matter of law on the breach of contract claim for the winter wheat concluding that Gary had conceded at trial that Stephens had not breached the lease agreement as to that crop. The court also granted Stephens' motion for judgment as a matter of law on both of the conversion claims, concluding that Schumachers failed to present any evidence of conversion of either the winter wheat or the spring wheat. Thus, the only issue to go to the jury was whether Stephens had breached the lease agreement as to the spring wheat.

¶11 In settling the jury instructions, the court refused to instruct the jury that the lease agreements contained an implied covenant which required that Stephens farm the land in a workmanlike and husbandlike manner or that the material participation agreements contained an implied covenant of cooperation binding upon Stephens. The court also refused to instruct the jury

on the law of negligence ruling that there could be no theory for breach of contract by negligent performance of the leases as contended by Schumachers.

¶12 The jury returned a unanimous verdict in favor of Stephens on the breach of contract claim for the spring-wheat production and Schumachers appeal. Schumachers also appeal the District Court's grant of judgment as a matter of law on the conversion claims.

Issue 1.

¶13 Did the District Court err by granting judgment as a matter of law against Schumachers on their conversion claims?

¶14 A motion for judgment as a matter of law is governed by Rule 50, M.R.Civ.P., which provides, in pertinent part:

> If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

Rule 50(a)(1), M.R.Civ.P. This Court's standard of review of appeals from district court orders granting or denying motions for judgment as a matter of law is identical to that of the district court. Durden v. Hydro Flame Corp. (Mont. 1998), 1998 MT 47, ¶22, ___ P.2d ___, ¶22, 55 St.Rep. 198, ¶22 (citing Ryan v. City of Bozeman (1996), 279 Mont. 507, 510, 928 P.2d 228, 229-30). Judgment as a matter of law is properly granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate inferences that might be drawn from that evidence must be considered in the light most favorable to the party opposing the motion. Durden, ¶21 (citing Jacques v. Montana Nat. Guard (1982), 199 Mont. 493, 504, 649 P.2d 1319, 1325).

¶15 At trial, Schumachers produced Stephens' Federal Crop Insurance reports for 1993 wherein Stephens reportedly produced 32,300 bushels of winter wheat and 22,000 bushels of spring wheat on Schumachers' land. This amounted to almost 7,000 more bushels of wheat than Stephens had paid Schumachers for. Schumachers contended that these reports were evidence of Stephens' wrongdoing. However, Stephens, along with several other witnesses, testified that the crop reports are merely estimates and do not indicate the actual amount of grain produced or sold.

¶16 Additionally, Gary testified that in September 1993, he visually inspected the grain bins that Schumachers permitted Stephens to use under the

leases.  Gary estimated that there were 47,700 bushels of winter wheat stored in the bins at that time.  This amounted to more than 19,000 bushels of winter wheat over and above what had been reported and paid to Schumachers. Furthermore, Schumachers produced an ASCS measurement of the spring-wheat crop which established that the grain bins held 24,379 bushels of spring wheat.  This amounted to more than 5,000 bushels of spring wheat over and above what had been reported and paid to Schumachers.  Again, Schumachers contended that this is evidence of Stephens' wrongdoing.  Even so, Stephens admitted that the grain bins did contain substantially more wheat than what had been reported to Schumachers, but, he explained that the additional grain belonged to his brother and one of his neighbors, who he permitted to store grain in some of the bins.  Stephens maintained that because not all of the wheat stored in the bins was produced on Schumachers' land, Schumachers were not entitled to a share of the proceeds for that grain.

¶17  Finally, Schumachers contended that the amount of both winter wheat and spring wheat reportedly produced by Stephens showed a poor crop yield for 1993 in direct contradiction to what Schumachers' neighbors reported for 1993.  Some of these neighbors testified that they produced winter-wheat yields of upwards of 70 bushels per acre during the 1993 crop year. Moreover, the 1993 county averages for wheat production in the area where Schumachers' farm was located was 55 bushels per acre of spring wheat and 67 bushels per acre of winter wheat on summer-fallow land and 55 bushels per acre of winter wheat and 44 bushels per acre of spring wheat on continuous-crop land. All of these amounts were considerably greater than what Stephens claimed to have produced on Schumachers' land.  In countering this argument, Stephens testified that the property was in poor condition when he took over the farming operation and that the low yields were caused by weeds, rocky soil and the like, thus a comparison to neighbors' yields would not be relevant. Stephens presented several witnesses who had been on the property at various times in 1993 and who testified that there was a weed problem.

¶18  The quantum of evidence indicating that the actual amount of wheat sold was as testified to by Stephens was overwhelming and would have required the jury to engage in pure speculation if they were to conclude otherwise.  Even considering the evidence in the light most favorable to Schumachers, the non-moving party, the jury would have had to go beyond reasonable and legitimate inferences to find in Schumachers' favor. Schumachers failed to present any evidence that there was any additional grain produced, that Stephens held unauthorized dominion over any additional grain, or that this unauthorized dominion resulted in damage to Schumachers.

¶19  Therefore, since there was no "legally sufficient evidentiary basis" for a reasonable jury to have found for Schumachers pursuant to Rule 50, M.R.Civ.P., we hold that the District Court did not err in granting Stephens' motion for judgment as a matter of law on the conversion claims.

Issue 2.

¶20 Did the District Court err by failing to instruct the jury that the lease agreements contained implied covenants obligating Stephens to perform the farming in a competent, skilled, workmanlike and husbandlike fashion?

¶21 A district court has broad discretion regarding the instructions it gives or refuses to give to a jury. Harwood v. Glacier Elec. Co-op., Inc. ( Mont. 1997), 949 P.2d 651, 655, 54 St.Rep. 1257 (citing Savik v. Entech, Inc. (1996), 278 Mont. 152, 158, 923 P.2d 1091, 1095; Lacock v. 4B's Restaurants, Inc. (1996), 277 Mont. 17, 20, 919 P.2d 373, 375). We will not reverse a district court on the basis of its instructions absent an abuse of that discretion. Fillinger v. Northwestern (1997), 283 Mont. 71, 83, 938 P.2d 1347, 1355 (citing Cartwright v. Equitable Life Assur. (1996), 276 Mont. 1, 26, 914 P.2d 976, 992; Cechovic v. Hardin & Associates, Inc. (1995), 273 Mont. 104, 116, 902 P.2d 520, 527).

¶22 When we examine whether particular jury instructions were properly given or refused, we must consider the instructions in their entirety and in connection with the other instructions given and with the evidence introduced at trial. Fillinger, 283 Mont. at 83, 938 P.2d at 1355 (citing Story v. City of Bozeman (1993), 259 Mont. 207, 222, 856 P.2d 202, 211). The party assigning error to the trial court's instructions must show prejudice in order to prevail. Fillinger, 283 Mont. at 76, 938 P.2d at 1351 (citing Hall v. Big Sky Lumber & Supply, Inc. (1993), 261 Mont. 328, 332, 863 P.2d 389, 392; Walden v. State (1991), 250 Mont. 132, 139, 818 P.2d 1190, 1194). Prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. Fillinger, 283 Mont. at 76, 938 P.2d at 1351.

¶23 Schumachers argued at trial that Stephens breached the lease agreements as to the spring wheat by negligently performing under the leases. In refusing Schumachers' proposed jury instructions setting forth the law of negligence, the District Court noted that Schumachers' theory that Stephens negligently breached the leases was not set forth in the pleadings and any duty imposed upon Stephens by the leases was contractual in nature.

¶24 Where the subject matter of an instruction is not applicable to the pleadings and facts in a case, or not supported by the evidence introduced at trial, a party is not prejudiced by a refusal of his or her proposed instructions. Harwood, 949 P.2d at 655, 54 St.Rep. at 1259, (citing King v. Zimmerman (1994), 266 Mont. 54, 64, 878 P.2d 895, 902). Therefore, we conclude that the District Court did not err in refusing Schumachers' proposed instructions on negligence.

¶25 Schumachers also argued at trial that Stephens breached the implied covenant in the leases requiring Stephens to farm the land in a husbandlike and workmanlike fashion. To that end, Schumachers offered their proposed instruction No. 34, which provides:

The farm leases between the plaintiffs and the defendant contained an implied and express promise by defendant that he will exercise skill, care, diligence, and farm plaintiffs' crop land in a husbandlike manner. Breach of this implied promise is a breach of contract. If you find defendant failed to exercise skill or care or diligence or that he failed to farm plaintiffs' crop land in a husbandlike manner, defendant is liable to plaintiffs for damages.

¶26 The District Court refused this instruction concluding that the leases themselves set out the specific duties which Stephens was required to follow and any instruction to the jury on that issue should follow the language set forth in the leases. Consequently, the court, rather than giving Schumachers' proposed instruction, instructed the jury as follows:

The crop share leases and material participation agreements involved in this case are contracts. An obligation which arises from a contract between the parties is a legal duty by which a party to the contract is bound to do the thing that party agrees to do in the contract.

From the evidence you have seen and the testimony you have heard, it is for you, the jury, to decide whether Robert Stephens, Jr. materially breached the terms of the leases, and it is for you to decide if Gary Schumacher materially breached the terms of the material participation agreements.

In addition, the court instructed the jury on the implied covenant of good faith and fair dealing:

Every contract, including the farm leases between the plaintiffs and the defendant, contains a promise between the parties of good faith and fair dealing, which is implied by law. Breach of this implied promise is a breach of the farm leases. It is not necessary for plaintiffs to prove the breach of an express contractual promise for you to find that the implied covenant of good faith and fair dealing was breached.

¶27 Schumachers contend that the District Court erred in refusing to instruct the jury that the leases contained implied covenants obligating Stephens to perform the farming in a competent, skilled, workmanlike and husbandlike fashion. We disagree. The leases set out the standard of care that had been agreed to by the parties, a standard that is more stringent than that set out in Schumachers' proposed instruction. It was this more stringent standard of care that was before the jury. There was no need to instruct the jury on any implied covenant to farm in a competent, skilled, workmanlike and husbandlike fashion as the leases expressly provided:

LESSEE agrees to carry on said farming with diligence and care in the exercise of LESSEE's best judgment and skill and to do all work necessary to cultivate, crop, harvest, thresh, and secure the crops grown and care for said premises in proper manner and to the best interest of LESSOR, all in such time and manner as shall be to the best advantage and economy.

¶28 Schumachers have not shown that they have been prejudiced in any way by the refusal of their proposed instruction. Moreover, reading the jury instructions in their entirety, as we are required, we conclude that the District Court did fully and adequately instruct the jury on Schumachers' theory of this case. The party assigning error to the trial court's instructions must show prejudice in order to prevail. Fillinger, 283 Mont. at 76, 938 P.2d at 1351. Prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. Fillinger, 283 Mont. at 76, 938 P.2d at 1351.

¶29 Accordingly, we hold that the District Court did not err by refusing to instruct the jury that the leases contained implied covenants obligating Stephens to perform the farming in a competent, skilled, workmanlike and husbandlike fashion.

                          Issue 3.

¶30 Did the District Court err by failing to instruct the jury that the material participation agreements contained an implied covenant obligating Stephens to cooperate with Schumachers?

¶31 As we stated in our discussion of the previous issue, a district court has broad discretion regarding the instructions it gives or refuses to give to a jury, Harwood, 949 P.2d at 655, 54 St.Rep. at 1259, and we will not reverse a district court on the basis of its instructions absent an abuse of discretion, Fillinger, 283 Mont. at 83, 938 P.2d at 1355. Moreover, we must consider the instructions in their entirety and in connection with the other instructions given and the evidence introduced at trial. Fillinger, 283 Mont. at 83, 938 P.2d at 1355.

¶32 Stephens had claimed in his defense that Gary had breached the material participation agreement first, thus relieving Stephens of liability. Schumachers argue that even so, the material participation agreements require the cooperation of both parties. With that in mind, Schumachers proposed the following instruction:

> Every contract, including the leases and material participation agreement between the plaintiffs and the defendant, contains implied promises between the parties that they will both cooperate with each other to effectuate the purpose of the agreements. If you find defendant failed to cooperate with plaintiffs, defendant is not entitled to claim he is excused from liability to pay plaintiffs' damages because of defendant's contention that plaintiffs breached the material participation agreements.

The District Court refused this instruction stating that the leases themselves define the obligations of the parties.

¶33   While the District Court refused Schumachers' proposed instruction as quoted above, the court did give another of Schumachers' proposed instructions that advanced a similar idea.  This instruction provided:  "The failure of a party to fully perform a contract is excused if his performance is prevented or delayed by the conduct of the other party."

¶34  Schumachers have not shown that they have been prejudiced in any way by the refusal of their proposed instruction as they were able to argue each of the points they wanted to make under this alternate instruction.  The party assigning error to the trial court's instructions must show prejudice in order to prevail.  Fillinger, 283 Mont. at 76, 938 P.2d at 1351.  Again, reading the jury instructions in their entirety, we conclude that the District Court did fully and adequately instruct the jury on Schumachers' theory of this case.  Fillinger, 283 Mont. at 83, 938 P.2d at 1355.

¶35  Accordingly, we hold that the District Court did not err by failing to instruct the jury that the material participation agreements contained an implied covenant obligating Stephens to cooperate with Schumachers.

¶36  Affirmed.
                         /S/   JAMES C. NELSON


We Concur:

/S/   J. A.  TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   TERRY N. TRIEWEILER
/S/   JIM REGNIER