FILED

12/05/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0730

DA 16-0730

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 298

ERIC HORN,

        Plaintiff and Appellant,

    v.

ST. PETER'S HOSPITAL,

        Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis And Clark, Cause No. BDV-2013-695
                    Honorable DeeAnn Cooney, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                L. Randall Bishop, Bishop, Heenan & Davies, Billings, Montana

                Eric Rasmusson, Bulman Law Associates, PLLC, Missoula, Montana

                Neel Hammond, Hammond Law, PLLC, Missoula, Montana

        For Appellee:

                David M. McLean, Ryan C. Willmore, McLean & Associates, PLLC,
                Missoula, Montana

Submitted on Briefs:  October 18, 2017

Decided:  December 5, 2017

Filed:

_____
                  Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Eric Horn appeals from the District Court's post-jury-trial orders overturning the verdict in Horn's favor, and granting judgment to St. Peter's Hospital (Hospital). We affirm.

¶2    We restate the issue on appeal as follows:

*Whether the District Court erred in granting a judgment as a matter of law in favor of St. Peter's Hospital following a jury verdict in favor of Eric Horn.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    Horn was injured in April 2011 when he fell from a roof, fracturing his heels and a vertebra. His injuries required several surgeries, a seventeen-day stay in the Hospital, and a subsequent period of immobilization. Prior to surgery, Hospital orthopedic surgeon Dr. Jeffrey Martin ordered that a retrievable blood clot filter be placed in Horn's inferior vena cava (IVC), a large vein leading to the heart. The purpose of installing the filter was to trap blood clots that might arise from the period of physical inactivity during Horn's recuperation after surgery. A radiologist employed by Great Divide Radiology implanted an Optease brand filter.

¶4    Dr. Martin was the primary physician responsible for Horn's care from April 28, 2011, to August 16, 2011. In early August 2011, after the filter had been in place about 120 days and Horn had regained some mobility, Dr. Martin ordered that it be removed. On August 16, 2011, Dr. Jeffrey Georgia attempted to remove the filter, but discovered that it was embedded in the wall of Horn's IVC and could not be retrieved.

2

¶5 After the failed filter retrieval, Horn returned to the Hospital's emergency room several times with severe abdominal, pelvic and groin pains. He was treated for a bladder or kidney infection, but in August 2011 returned to the ER with a swollen right leg. Horn was transported to St. Patrick Hospital in Missoula on August 29 and remained there through September 2, 2011. Doctors there treated Horn for a blood clot and hematoma, and inserted a stent in his left iliac vein.

¶6 The doctors at St. Patrick Hospital determined that removal of the blood clot filter was too complicated for them to attempt and referred Horn to the Oregon Health Sciences University in Portland. Doctors there unsuccessfully attempted to remove the embedded filter. In the process of doing so, the tip of a catheter broke off in the vein and could not be retrieved.

¶7 The OHSU referred Horn to Stanford University where doctors used a unique laser procedure to remove the blood clot filter. The Stanford doctors were unable to remove the fragment of catheter because it was embedded in the wall of Horn's IVC.

¶8 In September 2013 Horn sued St. Peter's Hospital seeking to recover damages for medical negligence. The case went to jury trial on August 29, 2016. Horn presented his case, including the testimony of treating doctors as well as two expert medical witnesses. When Horn rested, the Hospital moved for judgment as a matter of law under M. R. Civ. P. 50(a), contending that Horn had failed to prove that the Hospital departed from the applicable standard of care. The District Court denied the motion and the case proceeded, lasting a total of four days.

¶9    The jury returned a verdict in favor of Horn, awarding damages for medical expenses, lost wages, pain and suffering, and mental and emotional distress. On September 14, 2016, the District Court entered judgment in Horn's favor for $492,268.39.

¶10   The Hospital then renewed its motion for judgment as a matter of law and joined it with motions under M. R. Civ. P. 59 and 60 for a new trial and for relief from the judgment. On November 18, 2016, the District Court reversed its prior order and granted the Hospital's Rule 50(b) motion for judgment as a matter of law, dismissing Horn's complaint.

¶11   The District Court's order reviewed the testimony from the trial, noting that the only express reference to standard of care from Horn's expert, Dr. Alzheimer, came during cross-examination when he was asked whether the standard of care would vary depending upon where the medical professional practiced. The District Court concluded that Dr. Alzheimer "provided no opinion" regarding the applicable standard of care, or whether it was breached.

¶12   The District Court noted that Horn's other expert, Chris Bilyeu, testified about the practices and procedures followed by the hospital where he works in Sheridan, Wyoming. The District Court determined that Bilyeu did not establish that these practices and procedures constituted the standard of care "for all hospitals," and did not establish that they should have been followed by the Hospital in this case. The District Court determined that upon review, Bilyeu provided no opinion on the standard of care, and no opinion that the Hospital departed from the standard of care to Horn's injury.

4

¶13  The District Court also noted Horn's reliance upon the testimony of treating physician Dr. Martin, but again determined that Martin did not testify as to any standard of care or that there was a breach of the standard of care. The District Court further determined that the only expert to testify about a standard of care was the Hospital's expert, Dr. Moriarty. He testified that the decision to use the IVC filter was within "acceptable medical practice" and met the applicable standard of care. The District Court noted that Moriarty's testimony was "unrefuted."

¶14  The District Court rejected Horn's argument that the record showed negligence by the Hospital and that "multiple experts either inferred or admitted that the evidence indicated a deviation from what was safe and prudent aftercare." The District Court concluded that these arguments were unavailing because "inference, implication, and jury purview is not what Montana law requires. Expert testimony as to the standard of care must be presented at trial."

¶15  Horn appeals, seeking reversal of the District Court's order and reinstatement of the verdict and judgment in his favor.

**STANDARD OF REVIEW**

¶16  A district court may only grant judgment as a matter of law under M. R. Civ. P. 50 when "there is a complete absence of any evidence which would justify submitting an issue to a jury." *Schumacher v. Stephens*, 1998 MT 58, ¶ 14, 288 Mont. 115, 956 P.2d 76. All evidence and all legitimate inferences that might be drawn from it "must be considered in the light most favorable to the party opposing the motion." *Schumacher*, ¶ 14. This Court reviews the district court decision using those same principles to

5

determine whether the district court's decision was correct. *Schumacher*, ¶ 14. Determination of a Rule 50 motion is an issue of law, and this Court provides "full review . . . without special deference to the views of the trial court." *Johnson v. Costco Wholesale*, 2007 MT 43, ¶ 18, 336 Mont. 105, 152 P.3d 727.

¶17 Courts should "exercise the greatest self-restraint in interfering with the constitutionally mandated process of a jury decision." *Johnson*, ¶ 13.

## DISCUSSION

¶18 *Issue: Whether the District Court erred in granting a judgment as a matter of law in favor of St. Peter's Hospital following a jury verdict in favor of Eric Horn.*

¶19 Horn's claim was that the Hospital was negligent in providing care to him. Horn claimed that the Hospital failed to implement procedures to assess the risks of inserting various types of blood clot filters; failed to implement procedures for tracking filters after insertion into a patient; and waited too long to attempt retrieval of his filter. Horn contended that these failures resulted in the filter staying inside his body until retrieval was extremely difficult, requiring successive referrals to high-level medical facilities before the filter could be removed.

¶20 The District Court considered the Hospital's motion under M. R. Civ. P. 50, which provides in part:

> (1) If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and

6

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable ruling on that issue.

M. R. Civ. P. 50(a)(1).  The District Court applied the well-settled governing principle that judgment as a matter of law is

 properly granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate inferences that might be drawn from the evidence must be considered in the light most favorable to the party opposing the motion.

*Johnson*, ¶ 13.  The District Court also applied the principle that in cases of alleged medical negligence, the plaintiff (Horn) has the burden to establish the standard of care; that the standard was breached; and that he suffered damage.  *Labair v. Carey*, 2012 MT 312, ¶ 29, 367 Mont. 453, 291 P.3d 1160.  Expert testimony is required to establish these issues when they are beyond the common experience of the jury and the testimony will assist the jury in understanding the facts.  *Labair,* ¶ 29. These same principles apply when the case involves alleged medical negligence by a hospital.  *Dalton v. Kalispell Regional Hosp.*, 256 Mont. 243, 246-47, 846 P.2d 960, 962 (1993).

¶21   Horn does not dispute that these principles govern his claim against the Hospital. Horn contends that he proved that the Hospital "did not use reasonable care" in treating him, and that "multiple experts either inferred or admitted" that there was a "deviation from what was safe and prudent aftercare."  He contended that the treatment he received was "slipshod and negligently coordinated."  However, after review of the evidence that

7

Horn presented at trial, the District Court determined that neither of his two medical experts "established the requisite standard of care."

¶22    Horn's expert, Dr. Alzheimer, did not identify any medical standard of care that would have been applicable to Horn's situation, either as to the Hospital as an organization or as to individual doctors.  During Dr. Alzheimer's testimony, Horn's attorney read passages from medical articles and from the manufacturer's package insert for the IVC filter itself, asking him whether he "agreed" with the text.  In particular, Dr. Alzheimer "agree[d]" with the "advice and assessment" in the literature that "[t]he success of retrieval attempts has been shown to decrease with prolonged dwell times, . . . highlight[ing] the importance of frequent follow-up for reassessment of risk and consideration of filter retrieval."  The fact that Dr. Alzheimer "agreed" with what was read to him by the attorney is essentially irrelevant without further testimony that it was part of the established standard of medical care applicable to Horn's situation.  On cross-examination, Dr. Alzheimer also "agreed" that he was not aware of any filter that had been retrieved at the manufacturer's recommended twenty-three days, that the literature also had reported successful retrieval after a dwell time as long as 3,006 days, and that "these filters vary from patient to patient."

¶23    Similarly, Horn's other medical expert Chris Bilyeu failed to provide any testimony as to the standard of care for the defendant hospital.  Bilyeu, the medical imaging manager at Sheridan, Wyoming's eighty-eight-bed hospital, testified that "in [his] department" the company representative is brought in "for the first couple filter placements to make sure we know—understand how to use them."  In terms of filter

8

retrieval, Bilyeu stated, "Ultimately, . . . it's the collaboration between the ordering physician and the radiologist to determine that the filter can come out. We simply just provide an avenue to make sure they understand when the retrieval time is coming up." As the District Court noted, Bilyeu "provided testimony of what occurs at the hospital he works at." However, he "did not testify this was the standard of care for all hospitals, or opine this is the standard SPH should have utilized." On cross-examination, Bilyeu acknowledged that he was aware of only one case in which his hospital attempted retrieval of an Optease filter within the manufacturer's recommended twenty-three days, and his hospital "had to send it out" after an unsuccessful removal attempt. Again, Horn's second expert failed to provide any description of the standard of care applicable to this case. We have recognized that a medical provider's "individual practice, when not based on national standards, lacks relevance to a medical malpractice case." *Norris v. Fritz*, 2012 MT 27, ¶ 44, 364 Mont. 63, 270 P.3d 79. *See also Montana Deaconess Hospital v. Gratton*, 169 Mont. 185, 190, 545 P.2d 670, 673 (1976).

¶24 Horn also relies upon two documents from the manufacturer of the Optease filter. One appears to be information for patients as to the purpose, design and placement of the filter. It states, in part, that the filter "may be placed permanently as an implantable device or temporarily as a retrievable device" depending upon the doctor's recommendation. The other was an insert into the packaging for the filter itself. It states, in part, that a "21 patient study and a 40 patient retrospective chart review suggest" that the filter "can be safely retrieved (mean of 11.1 days, range 5-14 days and mean of 16.4

9

days, range 3-48 days)." The same section of the document then states that the "Optease filter can be safely retrieved up to 23 days."

¶25 While Horn argues that such manufacturer information may contain the standard of medical care, standing alone it does not do so. The issue is that there was no medical expert testimony stating that the manufacturer's information was the standard of care. There was no description of a standard of care that a jury could comprehend. A doctor witness's statement that he agreed with this information in no way helps the jury to understand it, and does not in any way establish the medical standard of care that should be followed by all hospitals for blood clot filter cases.

¶26 A manufacturer's recommendation or package insert can be relevant evidence to be considered by the jury, but it is not a substitute for the required expert evidence that describes the standard of care. *See Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 114 (Ky. 2008) (concluding that, although information about a drug in the package insert and the Physicians' Desk Reference "is relevant and useful information regarding the prescribing physician's standard of care, it is not the sole determinant of the standard of care"); *Richardson v. Miller*, 44 S.W.3d 1, 16-17 (Tenn. Ct. App. 2000) (observing that such materials are "intended to comply with the FDA's regulations, to provide advertising and promotional material, and to limit the manufacturer's liability" and cannot, by themselves, be considered prima facie evidence of the prescribing physician's standard of care); *Morlino v. Medical Center of Ocean County*, 684 A.2d 944, 949 (N.J. Super. App. Div. 1996) (holding that package inserts and parallel Physicians' Desk Reference information "may be considered by the jury along with

10

expert testimony to determine the appropriate standard of care"); *Craft v. Peebles*, 893 P.2d 138, 151 (Haw. 1995) (holding that a manufacturer's insert, in and of itself, may not establish the relevant standard of care in a medical negligence action, but may be considered by the fact finder "along with expert testimony" to define the standard of care).

¶27 Horn attempts to downplay this fundamental failure at trial by dismissing it as only a quibbling over the absence of "magic words." As noted above, Montana law has long required the presentation of expert testimony to establish the standard of care in a medical negligence case. *Labair*, ¶ 29. The issue here is the total failure to establish for the jury the medical standard of care applicable to this case. Without proof of this fundamental element of the medical negligence case, the jury was essentially left on its own to determine what the standard of care might be. The issue is not the absence of magic words, but rather trial counsel's failure to meet the clear and established requirements for maintaining a medical negligence case. Without presentation of a standard of care against which the jury can evaluate the medical care Horn received, this case becomes a simple negligence action governed by a "reasonable person" standard. This is contrary to Montana law.

¶28 The necessity of proving the first and essential leg of a medical negligence claim was at the forefront throughout this case. The District Court specifically referred to its prior order, which had stated that the "parties agree Horn bears the burden of establishing the standard of care" and that expert testimony is ordinarily required to establish the

standard of care. For whatever reason, that was not done when the case went to trial. Unfortunately, Horn must bear the burden of that failure.

¶29 The District Court determined that because of the failure to present evidence of the first and essential part of a medical negligence claim, the jury did not have a "legally sufficient evidentiary basis" to return a verdict against the Hospital for medical negligence. As discussed above, this is the threshold for granting a judgment as a matter of law under M. R. Civ. P. 50. The District Court applied the well-settled governing principle that judgment as a matter of law is warranted when there is a complete absence of evidence that would justify submitting an issue to a jury. *Johnson*, ¶ 13. With Horn's complete failure to prove the applicable standard of care, as the District Court eventually recognized, the case should not have been presented to the jury.

¶30 We agree with the District Court's evaluation of the evidence in this case. Even under the very high standard for granting a Rule 50(b) motion, it is clear that Horn's representatives at trial utterly failed to present evidence on the fundamental requirements of a medical negligence case—the applicable medical standard of care; a breach of the standard of care; and damage resulting from that breach. Unfortunately for Horn, this departure from the requirements for a prima facie claim of medical negligence make it impossible to uphold the jury verdict in this case.

## CONCLUSION

¶31 We affirm the District Court's order granting judgment to the Hospital.

/S/ MIKE McGRATH

12

We Concur:

/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ DIRK M. SANDEFUR
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE