FILED

03/31/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0327

DA 19-0327

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 74

JESSIE HOWLETT,

      Plaintiff and Appellant,

  v.

CHIROPRACTIC CENTER, P.C.,
and MICHAEL CRAIG MORRIS,

      Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. DV-2016-903
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

        For Appellees:

        Steve Reida, Patrick C. Riley, Planalp, Reida, Roots & Riley, P.C.,
Bozeman, Montana

Submitted on Briefs:  January 2, 2020

Decided:  March 31, 2020

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Jessie Howlett appeals following a trial in Montana's First Judicial District Court in which a jury determined that Michael Craig Morris, D.C., was not negligent in his care of Howlett.  We affirm.

¶2     We restate the issues on appeal as follows:

> *Issue One: Whether the District Court correctly denied Howlett's Motion for Partial Summary Judgment on the issue of liability.*
>
> *Issue Two: Whether the District Court abused its discretion when it denied Howlett's motion in limine to exclude at trial evidence of Morris's habits or routine practices when treating patients, subject to the foundational requirements of M. R. Evid. 406(c).*
>
> *Issue Three: Whether the District Court violated M. R. Evid. 615 when it admitted at trial Morris's perpetuated expert disclosures responding to Howlett's new loss of chance theory of recovery and perpetuated expert testimony after the close of discovery.*
>
> *Issue Four: Whether the District Court abused its discretion when it admitted at trial evidence of potential alternate causes of Howlett's injury without requiring Morris to prove alternate causation to a reasonable degree of medical probability.*
>
> *Issue Five: Whether the District Court abused its discretion when it allowed Howlett to be impeached by her attorney's application to the Montana Chiropractic Legal Panel.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     On June 6, 2015, Howlett, an ophthalmology technician, awoke to numbness in her right-hand pinky and ring fingers.  Two days later, she began to experience stiffness in her upper back.  On June 10, 2015, Howlett attended Chiropractic Center, P.C., in Helena, Montana, to receive treatment from Morris.  Prior to treatment, Howlett signed a

"consent to examination, treatment and procedures" form and an authorization for an "open door adjusting environment." Howlett received various pre-adjustment therapies before proceeding to the treatment room with Morris. Howlett was placed on an adjustment table and Morris examined her, suspecting she had a compromised cervical spine and possibly suffered a herniation at the C5-C6 vertebrae. Morris concluded that Howlett's neck muscles were hypertensive in order to protect this compromise from further injury. Morris asked Howlett to breathe in and out, and then adjusted her spine.[1] Howlett alleged that she felt an electric shock sensation from the cervical adjustment, to which Morris purportedly responded, "it's going to get worse before it gets better."

¶4 Howlett continued to see Morris for six subsequent visits over the next two weeks, reporting that she felt worse each time Morris adjusted her cervical spine. Howlett then went to Urgent Care where she saw Dr. Earl Book. Dr. Book ordered an MRI and referred Howlett to Dr. Kenneth Brewington for a neurosurgical consult. Brewington reviewed the MRI, which reflected a compression of Howlett's spinal cord. Brewington determined Howlett's injury was severe and required urgent decompression and stabilization. Brewington believed that the symptoms Howlett experienced during her first adjustment were consistent with what someone would feel when a disc herniates into their spinal canal.

---

[1] A key dispute throughout the litigation has been whether Morris provided alternatives to treatment and obtained consent from Howlett prior to administering treatment. Howlett contends that Morris adjusted her spine without any warning, while Morris claims that he always has discussions and encourages questions with clients prior to providing treatment.

¶5    On November 3, 2016, Howlett filed a Complaint and Demand for Jury Trial in District Court, alleging that Morris herniated her cervical disc;[2] that Morris did not possess the knowledge, skill, or expertise to examine, diagnose, or treat Howlett consistent with the standard of care required by a chiropractor in Montana; that Morris was negligent in his examination, diagnosis, and treatment of Howlett; and that Morris failed to disclose the nature and extent of the injury to Howlett or provide alternatives to chiropractic treatment. Howlett requested general damages as well as punitive damages for malice and fraud.

¶6    On August 23, 2018, Morris filed a Motion for Partial Summary Judgment with the court, seeking to dismiss Howlett's claim for punitive damages. On August 27, 2018, Howlett filed a Motion for Partial Summary Judgment, requesting the court enter judgment on the issue of liability for Morris's failure to obtain Howlett's voluntary informed consent to treatment. Howlett also filed multiple motions in limine seeking to preclude at trial (1) evidence or argument of her smoking habit; (2) evidence of other potential causes of the disc herniation and apportionment; (3) evidence of the personal practices of other medical providers; and (4) evidence regarding Morris's claim of habit or routine practice within the standard of care.

---

[2] In Montana, a lawsuit cannot proceed against a chiropractor without first being reviewed by the Montana Chiropractic Legal Panel ("Panel"). Section 27-12-301, MCA. Thus, prior to filing a complaint in District Court, Howlett's attorney filed a claim before the Panel, alleging Howlett's injury was caused by Morris's performance of a maximum cervical compression test during Howlett's first visit with Morris. By the time of trial, Howlett instead alleged that her injury was caused by Morris's repeated adjustments of her cervical spine.

¶7    At the time of summary judgment, Howlett relied on Morris's deposition from November 10, 2017, in which Morris purportedly conceded that he did not explain any risks of chiropractic adjustment to Howlett prior to administering treatment. In response, Morris provided the court with an affidavit clarifying that he was not asked in his deposition about routine statements he makes to first time patients or asked to explain his initial and continuing diagnosis of cervical segmental and somatic dysfunction, or that such diagnosis does not exclude herniated discs. Morris also submitted an interrogatory explaining that he "likely informed" Howlett about the risks of chiropractic treatment, including the possibility that her pain condition could continue and could increase temporarily, as well as short-term goals and symptoms as a result of treatment. It was undisputed that Howlett signed a general consent to treatment form.

¶8    Both Howlett and Morris also submitted to the court competing expert testimony as to the chiropractic standard of care. Howlett's expert, Dr. James Vancho, asserted that in his opinion, Morris did not gather sufficient history, perform enough tests, or provide adequate information to obtain Howlett's informed consent. However, Vancho did not know whether he warned patients that a herniated disc was a risk of chiropractic adjustment and he did not provide an opinion as to whether it was a violation of the standard of care for Morris to not explain alternatives to chiropractic care prior to administering treatment. Morris's expert, Dr. Gary Blom, disagreed with Vancho as to whether there is a standard of care in Montana regarding the content required to obtain informed consent in the chiropractic profession. Both experts agreed that neither

Montana regulations nor the American Chiropractic Association Guidelines provide a standard of care detailing the content required to obtain informed consent. In addition, Morris provided an expert disclosure from Dr. Steve Klein disputing the issue of causation as to when, where, and how Howlett's injury occurred.

¶9 On October 15, 2018, the court denied both parties' motions for partial summary judgment, determining there were disputed issues of material fact concerning Howlett's claims for liability and punitive damages and Morris's defenses to those allegations. The court also denied Howlett's motion in limine seeking to preclude at trial evidence of Morris's habits or routine practices when treating other patients, subject to the foundational requirements set forth in M. R. Evid. 406(c).[3]

¶10 On February 28, 2019, the court held its final pretrial conference. The court determined that the witness exclusion rule, pursuant to M. R. Evid. 615, would apply during trial. For the first time, Howlett raised a new allegation of "loss of chance to obtain a better medical outcome" not previously raised in the complaint. The pretrial order was signed on the same date. On March 4 and March 8, 2019, Howlett's counsel perpetuated the testimony of her expert witnesses, Dr. Vancho and Dr. Brewington, both of whom provided testimony regarding her new theory of recovery for loss of chance. Morris responded to this new testimony by supplementing expert witness disclosures from Dr. Blom and Dr. Klein.

---

[3] The District Court also denied Howlett's other motions in limine except for her third request—evidence of the personal practices of other medical providers—which was granted in part and denied in part.

6

¶11 On April 2, 2019, Howlett filed another motion in limine requesting the court exclude Dr. Blom's and Dr. Klein's supplemental testimony from the trial pursuant to the court's order requiring witnesses be sequestered. On April 22, 2019, the court denied Howlett's motion, concluding that M. R. Evid. 615 does not apply to deposition testimony in Montana, that Howlett's tactics were that of gamesmanship, and that Morris had a duty to supplement his expert disclosures in response to Howlett's new claim to assist with trying the case on its facts. In addition, the court found that the purpose behind Rule 615—to prevent witness collusion where witnesses tailor testimony at trial upon hearing other witness testimony—was not a concern under the circumstances as the experts were on opposing sides.

¶12 From April 22 to April 25, 2019, a jury trial was held on Howlett's negligence claim. During trial, Morris testified to his routine practices and habits during patient visits, explaining that he had seen over 1000 patients and that he always inputs patient history and findings into patients' files through the Chiropractic Center's electronic record system. Additionally, Morris testified that he always provides extensive testing to first time patients prior to administering treatment and that he always discusses findings with patients and encourages questions before moving to a treatment room. Morris further submitted at trial evidence of possible alternate causes of Howlett's injury, including her smoking habit, genetics, and repetitive work habits as an ophthalmology technician.

¶13 During cross-examination of Howlett, Morris's attorney wished to impeach her with her attorney's application to the Panel based on Howlett's changed theory of causation. The court called a side-bar conference to discuss whether it was permissible for Howlett to be impeached by the application's contents as the application was not a prior pleading. The court concluded that because Howlett was represented by counsel in a legal capacity at the time the application was submitted, she could be impeached with the application's contents as a statement by a party opponent. However, the court required that the Panel could not be mentioned, and evidence of the Panel's deliberations and decision could not be presented to the jury. Morris's attorney complied with the court's requests when cross-examining Howlett. On April 26, 2019, the jury returned a special verdict, finding Morris was not negligent in his care of Howlett. The jury did not reach the issue of causation. Costs of $1,499.80 were awarded to Morris. Howlett appeals.

**STANDARDS OF REVIEW**

¶14 Summary judgment rulings are reviewed de novo for conformance to M. R. Civ. P. 56. *Davis v. Westphal*, 2017 MT 276, ¶ 9, 389 Mont. 251, 405 P.3d 73. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). The initial burden is on the moving party to establish that no genuine issue of material fact exists. *Estate of Willson v.*

8

*Addison,* 2011 MT 179, ¶ 13, 361 Mont. 269, 258 P.3d 410.  The burden then shifts to the nonmoving party, who must set forth specific facts demonstrating a genuine issue for trial.  *Estate of Willson*, ¶ 13.

¶15    We review a district court's evidentiary rulings for an abuse of discretion, noting that a district court has broad discretion in determining the admissibility of evidence. *Daley v. BNSF Ry.*, 2018 MT 197, ¶ 3, 392 Mont. 311, 425 P.3d 669.  If an appellant demonstrates a district court abused its discretion in rendering an evidentiary ruling, we then determine whether the abuse constitutes reversible error.  *Seltzer v. Morton*, 2007 MT 62, ¶ 65, 336 Mont. 225, 154 P.3d 561.  When a district court's rationale for admitting or excluding evidence is based on a conclusion of law, we review such a conclusion de novo.  *State v. Guill*, 2010 MT 69, ¶ 21, 355 Mont. 490, 228 P.3d 1152.

**DISCUSSION**

¶16    *Issue One: Whether the District Court correctly denied Howlett's Motion for Partial Summary Judgment on the issue of liability.*

¶17    Howlett argues that the District Court erred when it denied her motion for partial summary judgment because there was no dispute as to any material fact that Morris did not obtain informed consent prior to administering treatment and therefore was liable for causing her injury.

¶18    In Montana, it is well settled that the plaintiff in a medical malpractice action must establish the following elements: (1) the applicable standard of care, (2) the defendant departed from that standard of care, and (3) the departure proximately caused the plaintiff's injury.  *Howard v. Replogle*, 2019 MT 244, ¶ 17, 397 Mont. 379, 450 P.3d

9

866; *Estate of Willson*, ¶ 17. Expert testimony is required to establish these elements.[4] *Howard*, ¶ 17 (citing *Horn v. St. Peter's Hosp.*, 2017 MT 298, ¶ 20, 389 Mont. 449, 406 P.3d 932). A plaintiff must also establish that a physician's conduct breached a national standard of care. *Norris v. Fritz*, 2012 MT 27, ¶ 44, 364 Mont. 63, 270 P.3d 79. On a M. R. Civ. P. 56 motion for summary judgment, without medical expert testimony establishing the applicable standard of care and a departure from that standard, no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. *See Estate of Nielsen*, 265 Mont. at 473, 878 P.2d at 236 (affirming summary judgment because plaintiff failed to "affirmatively produc[e]" evidence that the defendant "breached a duty of care."). The disclosures required to obtain informed consent are a matter of medical judgment and dependent upon the facts of each case. *Collins v. Itoh*, 160 Mont. 461, 467-68, 503 P.2d 36, 40 (1972).

¶19 Howlett's argument assumes (1) that Morris did not obtain any informed consent prior to treating Howlett, and (2) because informed consent was not obtained, the issue of liability is settled. Howlett's argument fails. Without first establishing the applicable standard of care, there can be no factual showing placing a chiropractor's breach of a standard of care at issue. *Estate of Nielsen*, 265 Mont. at 473, 878 P.2d at 235-36. At the time of summary judgment, there was a dispute as to a material fact concerning the required standard of care for chiropractors. Howlett's expert, Dr. Vancho, testified that

---

[4] In a chiropractic malpractice case, a plaintiff is required to establish, with expert testimony, the same elements as medical malpractice actions regarding the applicable standard of care and departure from that standard. *Estate of Nielsen v. Pardis*, 265 Mont. 470, 473, 878 P.2d 234, 235-36 (1994).

10

he believed there was an agreed upon standard of care in Montana, while Morris's expert, Dr. Blom, testified that he disagreed that there was an agreed upon standard of care. Both experts agreed, however, that neither Montana regulations nor the American Chiropractic Association Guidelines detail a standard of care related to the content required by a chiropractor to obtain informed consent. Further, Howlett did not submit any published guidelines to the court to establish a chiropractor's duty to inform a patient of alternatives to treatment. Clearly, there was a dispute as to a material fact regarding the standard of care for chiropractors. It would have been premature for the court to conclude Morris was liable without establishing this threshold requirement.

¶20 There was also a factual dispute as to whether Morris obtained informed consent prior to administering treatment. Howlett claims that Morris did not obtain informed consent prior to treatment and did not explain to Howlett any risks or alternatives of chiropractic adjustments. However, Howlett's own expert, Dr. Vancho, did not know if he warned patients that a herniated disc was a risk of chiropractic adjustment. It is undisputed that Howlett signed a consent to treatment form prior to receiving treatment from Morris. Further, Morris submitted to the District Court an interrogatory stating that he "likely informed" Howlett as to the risks, symptoms, and short-term goals of treatment and an affidavit clarifying that he was not asked in his deposition about routine statements he makes to first time patients or asked to explain his initial and continuing diagnosis of Howlett. Accordingly, there was a dispute as to a material fact as to whether Morris departed from the standard of care.

11

¶21 At the time of summary judgment, disputes as to material facts existed as to the chiropractic standard of care and whether Morris departed from that standard in treating Howlett. The District Court correctly denied Howlett's motion for summary judgment on the issue of liability.

¶22 *Issue Two: Whether the District Court abused its discretion when it denied Howlett's motion in limine to exclude at trial evidence of Morris's habits or routine practices when treating patients, subject to the foundational requirements of M. R. Evid. 406(c).*

¶23 Howlett argues the District Court erred when it denied her motion in limine seeking to exclude at trial evidence of Morris's habits or routine practices when treating patients because such evidence is irrelevant to this case and violates M. R. Evid. 406.

¶24 The authority to grant or deny a motion in limine rests in the inherent power of the court to admit or exclude evidence and to take such precautions as necessary to afford a fair trial for all parties. *Daley*, ¶ 7 (citations omitted). Relevant evidence is generally admissible. M. R. Evid. 402. "Evidence of habit or of routine practice, whether corroborated or not, and regardless of the presence of eyewitnesses, is relevant to prove that conduct on a particular occasion was in conformity with the habit or routine practice." M. R. Evid. 406(b). "Habit or routine practice may be proved by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine." M. R. Evid. 406(c).

¶25 Here, it was relevant for the jury to understand Morris's routine practices for treating patients to determine whether he departed from his normal routine in his treatment of Howlett. Therefore, pursuant to M. R. Evid. 406(c), it was entirely within

12

the broad discretion of the trial court to allow Morris to testify regarding his routine practices, so long as he established sufficient foundation. Morris provided adequate foundation at trial, testifying that he had seen over 1000 patients, that he "always" made certain statements, performed certain tests, and responded to specific events by recording notes in the patient file. The District Court did not abuse its discretion in denying Howlett's motion in limine and permitting Morris to testify at trial as to his habits and routine practices when treating patients, subject to the foundational requirements of M. R. Evid. 406(c).

¶26 *Issue Three: Whether the District Court violated M. R. Evid. 615 when it admitted at trial Morris's perpetuated expert disclosures responding to Howlett's new loss of chance theory of recovery and perpetuated expert testimony after the close of discovery.*

¶27 Howlett argues that the District Court violated its order to sequester witnesses when it did not exclude from trial Morris's perpetuated expert disclosures responding to Howlett's perpetuated expert testimony regarding her new loss of chance theory of recovery. Howlett further asserts the court deprived her of a fair trial by admitting Morris's perpetuated expert testimony.

¶28 M. R. Evid. 615 provides in pertinent part: "At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses . . . ." Rule 615 is inapplicable to these facts. As the District Court correctly concluded, Montana has not declared that Rule 615 applies to deposition testimony. Moreover, although these were perpetuation depositions, Howlett did not seek to apply the witness sequestration order to the depositions. Further, Morris's experts, Dr. Blom

13

and Dr. Klein, were not present in the courtroom and did not hear other witness testimony. Instead, Morris's experts simply provided supplemental responses to Howlett's new theory of recovery, "loss of chance," presented at the final pretrial conference after the close of discovery. As the District Court noted, Morris had a duty to supplement his expert disclosures responding to Howlett's new theory and perpetuated expert testimony on the issue in order to ensure a fair trial on the merits. The District Court properly applied Rule 615 regarding witness exclusion.

¶29 *Issue Four: Whether the District Court abused its discretion when it admitted at trial evidence of potential alternate causes of Howlett's injury without requiring Morris to prove alternate causation to a reasonable degree of medical probability.*

¶30 Howlett also argues that the District Court abused its discretion by admitting at trial evidence of possible alternate causes of Howlett's injury that were not proven to a reasonable degree of medical probability to be a cause.[5]

¶31 The plaintiff in a medical malpractice case has the burden of establishing causation. *Faulconbridge v. State,* 2006 MT 198, ¶ 77, 333 Mont. 186, 142 P.3d 777. A defendant is permitted to submit relevant evidence of subsequent accidents or preexisting conditions to negate allegations that he is the cause or sole cause of an injury, subject to the trial court's application of traditional evidentiary considerations. *Clark v. Bell*, 2009 MT 390, ¶¶ 23, 25, 353 Mont. 331, 220 P.3d 650; *see also Truman v. Mont. Eleventh*

---

[5] Troublingly, contrary to her duty under M. R. App. P. 8(2) ("The appellant and any cross-appellant have the duty to present the supreme court with a record sufficient to enable it to rule upon the issues raised . . . ."), Howlett did not provide the Court with the entire trial record, omitting testimony of additional treatment providers as well as transcripts from opening statements and closing arguments. It is therefore impossible for this Court to determine the complete picture of the evidence presented and how the issue of causation may have been argued to the jury.

*Jud. Dist. Ct.*, 2003 MT 91, ¶ 31, 315 Mont. 165, 68 P.3d 654. Or, a defendant may attempt to prove he or she is liable only for a portion of the plaintiff's damages by proving to a reasonable medical probability that the injury is divisible. *Truman*, ¶ 32. Thus, only where a defendant seeks to apportion an injury, as opposed to rebut causation, does he or she have to prove to a reasonable medical probability that the injury is divisible. *Cheff v. BNSF Ry. Co.*, 2010 MT 235, ¶ 36, 358 Mont. 144, 243 P.3d 1115 (citing *Clark*, ¶ 23). Further, M. R. Civ. P. 61 provides, "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

¶32 Morris has argued from the outset of the case that he did not cause any of the injury claimed by Howlett. Accordingly, in introducing at trial potential alternate causes of Howlett's injury, including her health history and smoking habit, Morris was not required to prove causation to a reasonable degree of medical probability. What's more, the jury found that Morris was not negligent. It did not reach the issue of causation. Any error by the District Court in denying Howlett's motion in limine and allowing Morris to introduce at trial evidence of potential alternate causes of Howlett's injury did not affect her substantial rights and was therefore harmless. M. R. Civ. P. 61. This Court will not reverse for an alleged error when the outcome would have been the same had the error not been committed. *Steffensmier v. Huebner*, 2018 MT 173, ¶ 12, 392 Mont. 80, 422 P.3d 95 (citing *Pula v. State*, 2002 MT 9, ¶¶ 34-35, 308 Mont. 122, 40 P.3d 364). The District Court did not abuse its discretion in admitting Morris's alternate cause evidence.

15

¶33    *Issue Five: Whether the District Court abused its discretion when it allowed Howlett to be impeached by her attorney's application to the Montana Chiropractic Legal Panel.*

¶34    Finally, Howlett argues that the District Court abused its discretion when it allowed Morris to impeach her at trial with her counsel's application to the Panel because the application was not a prior pleading or a statement of fact.

¶35    In Montana, a lawsuit cannot proceed against a chiropractor without first being reviewed by the Panel. Section 27-12-301, MCA. At the time Howlett's attorney submitted the application to the Panel, Howlett alleged that her injury was caused by Morris's performance of a maximum cervical compression test during her first appointment. By the time of trial, Howlett instead alleged that her injury was caused by Morris's repeated adjustments of her cervical spine. The purpose behind Morris's impeachment of Howlett with her attorney's application to the Panel was thus to highlight to the jury Howlett's changed position throughout the litigation as to causation of her injury.

¶36    We need not address the merits of Howlett's argument. Again, the jury determined that Morris was not negligent in his care of Howlett and did not reach the issue of causation. The District Court's decision to allow Howlett to be impeached by her attorney's application to the Panel, therefore, did not affect the outcome of the trial and its error, if any, was harmless. *Pula*, ¶¶ 34-35; M. R. Civ. P. 61.

16

## CONCLUSION

¶37 The District Court correctly determined that there were disputed issues of material fact as to the chiropractic standard of care and whether Morris departed from that standard of care such that Howlett was not entitled to summary judgment on the issue of liability. Additionally, it was well within the court's discretion to admit evidence of Morris's habits and routine practices when treating patients, subject to the foundational requirements of M. R. Evid. 406(c). The District Court also did not err in admitting Morris's perpetuated expert testimony responding to Howlett's loss of chance theory of recovery raised after the close of discovery because Morris had a duty to supplement his expert disclosures for a trial on the merits and M. R. Evid. 615 does not apply to deposition testimony in Montana. Finally, any error by the court in admitting at trial alternate cause evidence or allowing Howlett to be impeached with her attorney's application to the Montana Chiropractic Legal Panel was harmless because the jury did not reach the issue of causation.

¶38 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON